## SANITARY REFRIGERATOR COMPANY *v.* WINTERS ET AL.

## WINTERS ET AL. *v.* DENT HARDWARE COMPANY.

Nos. 4 and 14.   Argued April 19, 22, 1929.—Decided October 14, 1929.

See
20 F. (2d) 671.

*Mr. E. Hayward Fairbanks* for Sanitary Refrigerator Company and Dent Hardware Company.

*Messrs. Frank E. Liverance, Jr.,* and *John Boyle, Jr.,* for Winters and Crampton.

MR. JUSTICE SANFORD delivered the opinion of the Court.

These are two suits in equity relating to letters patent No. 1,385,102 for improvements in latches, issued to Winters and Crampton July 19, 1921. They were heard together here. The invalidity of the two general claims of the patent, 5 and 6, has been conceded, and the issues here are limited to the five specific claims, 1, 2, 3, 4, and 7.

In No. 4—hereinafter referred to as the Sanitary case— Winters and Crampton brought suit in the Eastern District of Wisconsin against the Sanitary Refrigerator Co. for infringement of the patent by the latch which it used in the manufacture of refrigerators. The Dent Hardware Co., which had manufactured and sold the latches to the Refrigerator Co., although not itself a party to the suit, employed counsel and conducted the defense of the suit at its own expense. The District Court, after a

hearing on pleadings and proof, held that the patent was valid and infringed, enjoined further infringement and ordered an accounting. On appeal to the Circuit Court of Appeals for the Seventh Circuit, the defendant admitted the validity of the five specific claims, " accompanied by the statement that validity was recognized only in view of an asserted construction which gave to each so narrow a field that infringement was not disclosed." The court, finding that the sole issue remaining was one of the infringement of these claims, held that, while they were extremely narrow and were restricted to the particular structure disclosed, they had some range of equivalency and were infringed by the defendant's latch; and affirmed the decree of the District Court in respect to them. 24 F. (2d) 15.

In No. 14—hereinafter referred to as the Dent case— Winters and Crampton, after the decree of the District Court in the Sanitary case but before that of the Circuit Court of Appeals, brought a suit for infringement in the Eastern District of Pennsylvania against the Dent Hardware Co., the manufacturer of the refrigerator latches. The District Court, on final hearing, held that as to the five specific claims the question was not as to their validity but as to their scope, there being in effect no denial of the plaintiff's right to the specific construction described, and that these claims should be so read as to restrict their right to the specific construction and were not infringed by the defendant's latches; and dismissed the bill of complaint. On appeal to the Circuit Court of Appeals for the Third Circuit, the defendant again conceded that the five claims " were valid if limited to the specific structure disclosed," but claimed that, when so limited, it did not infringe. The court, while it had grave doubt as to the validity of these claims, finding that, if valid, their scope was clearly confined to the structural design dis-

closed and had only a narrow range of equivalency—and not agreeing with the opinion of the Circuit Court of Appeals in the Sanitary case, which meanwhile had been handed down—held that they were not infringed by the Dent latch; and affirmed "the decree of the District Court, dismissing the bill because of noninfringement." 28 F. (2d) 583.

There being a conflict of opinion between the two Circuit Courts of Appeals on the question of infringement, writs of certiorari were thereafter granted in both cases.[1]

1. Since both courts in the Sanitary case held the five specific claims to be valid, and neither court in the Dent case held them to be invalid, and the Hardware Co. in defending for the Refrigerator Co. in the Sanitary case and for itself in the Dent case, admitted in both Circuit Courts of Appeals that these claims were valid if limited to the specific structure disclosed, we have no occasion here to determine the question as to the validity of these claims when thus limited; especially as the petition for certiorari in the Sanitary case did not question the decree of the Circuit Court of Appeals for the Seventh Circuit in respect to the validity of these claims, but assigned as error merely its holding in reference to the question of infringement and was based solely on the conflict between the two circuits in respect to that question.[2]

---

[1] In the Sanitary case the petition for the writ of certiorari was filed before the decree of the Circuit Court of Appeals for the Third Circuit in the Dent case had been handed down; and was then denied. 278 U. S. 599. But after the handing down of that opinion, showing the conflict as to the question of infringement, was brought to our attention by a petition for rehearing, the certiorari was granted. 278 U. S. 587. However, the Refrigerator Co. did not challenge the correctness of the holding of the Circuit Court of Appeals for the Seventh Circuit that the five specific claims were valid; and the petition was based entirely on the conflict of opinion as to the question of infringement.

[2] See Note 1, supra.

2. Nor have we occasion here to consider át length whether, as urged by Winters and Crampton, the decree of the Circuit Court of Appeals for the Seventh Circuit affirming the interlocutory order of the District Court adjudging the infringement and ordering an accounting, finally and conclusively determined the question of infringement so as to become binding upon the Circuit Court of Appeals for the Third Circuit. The bill in the Dent case was filed before the judgment of the Circuit Court of Appeals for the Seventh Circuit had been rendered. This judgment was not set up by Winters and Crampton in the Dent case by any amendment to the pleadings; nor was it even introduced in evidence in that case. In short, there is nothing in the record in that case to raise the defense of *res judicata* or estoppel by judgment; and the only effect of the decree in the Seventh Circuit when called to the attention of the Circuit Court of Appeals for the Third Circuit in argument was, at most, that which it had under the doctrine of comity, constituting a rule, not of law, but of practice, convenience and expediency; and if we thought the action of the Circuit Court of Appeals for the Third Circuit "correct upon the merits, we should not reverse its action" though we were of opinion it had not given sufficient weight to that doctrine. See *Mast, Foos & Co.* v. *Stover Mfa. Co.,* 177 U. S. 485, 488.

3. This brings us to the question brought up for review by the writs of certiorari, as to whether the five specific claims of the Winters and Crampton patent were infringed by the refrigerator latches manufactured by the Dent Hardware Co. and used by the Refrigerator Co.

So far as this question is concerned there is no substantial difference in the evidence in the two cases. As there was a concurrent finding in the two lower courts in the Sanitary case that they were infringed, and a concurrent finding in the two lower courts in the Dent case that they

were not infringed, and the cases have been brought here because of the conflict of decision in the two Circuit Courts of Appeals, it is clear that under these circumstances, neither properly calls for the strict application of the general rule as to the acceptance by this Court of the concurrent findings of the lower courts on questions of fact, and we consider independently the question as to which of the decisions on this question is based upon the sounder reasoning and is correct. Compare *Thomson Co.* v. *Ford Motor Co.*, 265 U. S. 445, 447; *Concrete Appliances Co.* v. *Gomery*, 269 U. S. 177, 180. Furthermore upon the undisputed evidence the question of infringement resolves itself in each case into one of law, depending upon a comparison between the structure disclosed on the face of the patent and the device shown in the Dent latch, and the correct application thereto of the rule of equivalency. Compare *Singer Company* v. *Cramer*, 192 U. S. 265, 275.

4. In the application for their patent Winters and Crampton said: " This invention relates to a latch of the swinging lever type, particularly adapted for use on refrigerators though applicable in many other relations where a door is to be closed and held in closed position. The swinging lever latch . . . is pivotally connected at one end to the door jamb or casing, allowing the door to be opened when the latch is thrown to an upper vertical position, and coming down across the meeting edges of the casing and door when swung to horizontal position, engaging with a cam member on the door to wedge the door tightly shut. This latch is a very serviceable latch but . . .. is liable to drop to horizontal position in which case the door cannot be closed without first raising the lever to upper vertical position while, many times, the door is inadvertently swung toward closed position and against the lever in its horizontal position with injury either to the lever or door or both. In the present inven-

tion, it is a primary object and purpose to provide a latch which may be pivotally connected to the door and which is automatically operated to engage with a retaining member or keeper fixed on the door casing when the door is closed irrespective of the vertical or horizontal position of the latch lever, working as well in the one case as the other. A further object of the invention is to construct a latch of few parts, whereby it may be economically made and which will be durable and efficient in service. . . . The ability to close the door and latch it automatically, irrespective of the position of the latch lever, insures against injury to the latch or door and also insures that the door will be latched when it is swung shut."

Claims 1 and 7, which are typical, read as follows:

" 1. In combination, a door and a casing therefor, a keeper attached to the casing comprising a base, an outstanding post and a head at the outer portion of the post, said head depending below the post and formed with upper and lower curved outer sides coming substantially to a point and with an inner upwardly and inwardly inclined side, a member attached to the door comprising a base, an integral outstanding post projecting from the base and a laterally extending arm at the upper end of the post paralleling the base, and a latch lever pivotally mounted between its ends between the said arm and base of said member, said lever having one arm formed with an under cam side extending from the pivot and adapted to be engaged under the depending portion of the keeper, a handle portion extending in the opposite direction from the pivot and another arm projecting from the handle portion a distance from the pivot and lying substantially at right angles to the first arm of the lever and likewise being formed with an inner cam side, substantially as and for the purposes described.

" 7. In combination, a door and a casing therefor, a keeper attached to the casing, a latch lever pivotally

mounted on the door between its ends, one end of the lever being formed into an operating handle and the other into a keeper engaging arm, a second arm projecting from the handle portion of the lever a short distance from its pivot and at an angle to the first arm, said keeper being formed at its outer sides for engagement with the respective arms when the lever is in horizontal and vertical positions, respectively, as the door is closed, to automatically operate the lever so that it will engage under the keeper when the door is entirely closed, substantially as described."

We insert here reproductions (on a reduced scale) of Figure 4 of the drawings which is a front elevation showing the door approaching closed position with the swinging lever in vertical relation to the door; Figure 5, a side elevation thereof; Figure 6, a front elevation showing the action on the swinging lever as the door approaches closed position after the lever has been in horizontal position; and Figure 1, a front elevation showing the latch in closed position and holding a door closed. These show the patented device in detail.

The operation of closing and latching the door is thus described in the specification:

"When the door is moved toward closing position with the lever vertically located, the cam side 13 of arm 12 strikes against the curved upper side 18 of head 17, causing the lever to be automatically swung toward the horizontal, and bringing the arm 9 into place so as to pass under the lower point of the keeper head so that it may engage at its outer side against the wedging cam side 20 of the head. It is apparent that by giving the end of handle 11 a downward movement, the door will be wedged tightly shut as the arm 9 moves upwardly and against the incline 20. . . . If the lever has dropped to horizontal position while the door is open, the closure of the door and engagement of the lever with the keeper is accomplished by merely swinging the door shut, in which case, as shown in Figs. 6

and 7, the arm 9 strikes with its inclined cam side 10 against the lower curved side 19 of the head 17 of the keeper, causing the handle to be automatically turned toward vertical position. This movement continues until the arm 9 passes by the lower point of the keeper head 17 or, as usually occurs, the arm 12 comes into contact with the head at the upper side 18, whereupon the lever is actu-

ated so as to bring the arm 9 under the depending portion of the keeper, the same as before described when closing the door with the lever in vertical position. In any case, the latch lever engages with the latch keeper when the door is closed irrespective of the position of the lever."

While this patent came into a prior art crowded with various latch devices for holding a door in closed position

40

when it was shut and was not a pioneer patent entitled to a broad range of equivalents, the structure which it disclosed was meritorious and soon attained a large measure of commercial success.

5. The Dent latch is manufactured under letters patent No. 1,575,647 for lock devices for refrigerator doors issued March 9, 1926 to T. O. Schrader, assignor of the Hardware Co. In his application for this patent Schrader said: "I am aware of [Winters and Crampton] patent No. 1,385,102 dated July 19, 1921, and I disclaim the structure therein disclosed, as my invention is differentiated therefrom, since whereas the structure disclosed in said patent utilizes a pin 12 carried by the latch arm 11, which coacts with an upper cam edge 18 of the keeper member 17; in my novel construction the upper edge of my keeper plate $b^3$ has no function, but the pivotal latch $c^6$ carries a cam $c^1$ inclined to the pivot of said latch and adapted to coact with a pin $b^8$ carried by and laterally projecting from, the inner wall of the keeper plate $b^3$ thereby to swing the terminal tongue of the latch into the horizontal locking position; and to none of the constructions of the prior art do I herein make claim."

The latch manufactured by the Hardware Co. which is involved in both these cases, differs only slightly in form from that shown in the Schrader patent. It is in the main an exact reproduction of the structure disclosed in the Winters and Crampton patent. It has like it a keeper attached to the door casing, with a triangular head, and a lever latch with a handle and two arms whose functions are to trip or give a kick to the latch lever by their coaction with the keeper head, and wedge the lower arm under it, regardless of the position of the latch lever when the closing operation begins. The only differences are that in the Dent latch the keeper has on the inner or door side of the triangular head a lug projecting inwardly towards the latch lever; and the upper arm of the latch lever is a short

inclined cam placed at the pivot of the latch lever, and so constructed and at such an angle that it rides upon and contacts with the lug on the side of the keeper head, instead of with its upper curved side as in the Winters and Crampton structure. The coaction of this shortened arm with the lug operates, however, on the cam principle, just as the coaction of the longer upper arm with the curved upper surface of the keeper head in the Winters and Crampton structure, to trip or kick the lower arm of the latch lever into the wedged position under the keeper head.

6. Despite the changes in the Dent latch from the Winters and Crampton structure we find that the two devices are substantially identical, operating upon the same principle, and accomplishing the same result in substantially the same way, and that the slight change in the form of the Dent latch is merely a colorable departure from the Winters and Crampton structure.

In the Dent latch, as stated by the Circuit Court of Appeals for the Seventh Circuit, the lug on the inner side of the triangular head of the keeper is a part of the side of the head. And at the place where the shortened upper arm of the latch lever comes in contact with it, the surface of this lug forms in effect the upper side of the keeper head as a substitute for the upper side in the Winters and Crampton structure, which, while left in place, performs no function whatever, just as if it were cut away.

Although the claims of the Winters and Crampton patent are limited to the structure therein disclosed, we find that they are infringed by the device of the Dent latch. Both Circuit Courts of Appeals recognized that the Winters and Crampton patent, although thus limited had some range of equivalents; and we think that, though it be a narrow one, it is sufficient.

There is a substantial identity, constituting infringement, where a device is a copy of the thing described

by the patentee, "either without variation, or with such variations as are consistent with its being in substance the same thing." Burr v. Duryee, 1 Wall. 531, 573. Except where form is of the essence of the invention, it has little weight in the decision of such an issue; and, generally speaking, one device is an infringement of another "if it performs substantially the same function in substantially the same way to obtain the same result. . . . Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape." Machine Co. v. Murphy, 97 U. S. 120, 125. And see Elizabeth v. Pavement Co., 97 U. S. 126, 137. That mere colorable departures from the patented device do not avoid infringement, see McCormick v. Talcott, 20 How. 402, 405. A close copy which seeks to use the substance of the invention, and, although showing some change in form and position, uses substantially the same devices, performing precisely the same offices with no change in principle, constitutes an infringement. Ives v. Hamilton, 92 U. S. 426, 430. And even where, in view of the state of the art, the invention must be restricted to the form shown and described by the patentee and cannot be extended to embrace a new form which is a substantial departure therefrom, it is nevertheless infringed by a device in which there is no substantial departure from the description in the patent, but a mere colorable departure therefrom. Compare Duff v. Sterling Pump Co., 107 U. S. 636, 639.

The fact that, as the Dent device makes two reciprocal changes in the form of the Winters and Crampton structure, one by the insertion of the lug on the keeper head, and the other in the shortened upper arm of the latch

lever, and one alone of these changes cannot be substituted in the Winters and Crampton structure without the other, so as to make it operative, is plainly insufficient to avoid the infringement.

Nor is the infringement avoided, under the controlling weight of the undisputed facts, by any presumptive validity that may attach to the Schrader patent by reason of its issuance after the Winters and Crampton patent.

The decree of the Circuit Court of Appeals for the Seventh Circuit in the Sanitary case is affirmed; and the decree of the Circuit Court of Appeals for the Third Circuit in the Dent case is reversed.

*No. 4 Affirmed.*
*No. 14 Reversed.*