## IRA M. PETERSIME & SON v. ROBBINS
(two cases).

Nos. 8805, 9033.

District Court, D. Colorado.

Feb. 20, 1930.

Toulmin & Toulmin, of Dayton, Ohio, and Henry C. Vidal, of Denver, Colo., for plaintiffs.

A. J. O'Brien, of Denver, Colo., for defendant.

SYMES, District Judge.

Two suits, No. 8805, involving patent No. 1,562,787, dated November 24, 1925, and No. 9033, involving patent No. 1,646,490, dated October 25, 1927, were consolidated, tried, and briefed as one. The plaintiffs manufacture and sell the egg incubator covered by the first of the above patents, and alleg° that the defendant manufactures and sells

an incubator embodying the inventions and infringing patent No. 1,562,787.

The second patent, No. 1,646,490, relates to ovens and driers for making dough and drying various articles. Plaintiffs allege that the defendant has likewise infringed this patent.

The answers deny infringement, and allege that because of the prior state of the art both Petersime patents are invalid.

█ The main issue is presented in the first suit, No. 8805. The plaintiffs' device consists of an open cabinet without partitions, provided with doors for access. It contains a longitudinal shaft, the ends of which rest on bearings on opposite walls of the cabinet. On this shaft is a drum carrying a plurality of egg trays that slide into convenient compartments arranged in spaces to hold them conveniently. The trays are of various sizes, according to their position in the drum, and are provided with top and bottom screens and partitions, between which the eggs are placed close together, so that they will be held in their proper position and not subject to displacement when the drum is rotated, as it may be by a handle or lever attached to the end of the shaft on the outside of the cabinet. Heated air of the desired humidity enters at the bottom and passes out at the top. The air so entering is agitated by the slow-moving agitator, or stirrer, hereafter referred to.

The patents in question are not basic improvement inventions. They relate to an improved device applicable to mechanically operated incubators operated by mechanical means, whereby the eggs, during their preliminary period of incubation, will be turned and subjected to an even temperature. A further object, or idea—and the only one here involved that is new or patentable—is the provision for a rotatable stirrer, or agitator element, consisting of blades adapted to pass around the exterior of the said drum at the rate of 190 revolutions per minute, which keeps the air in motion and maintains a uniform temperature throughout the cabinet.

The novel factor is that this agitator element does not create an air current. It thoroughly mixes the air without creating any air currents of any defined direction or application to any part of the interior of the cabinet.

The claims made by the inventor emphasize the importance of the agitator element.

It consists of a pair of members pivotally mounted on said longitudinal shaft, one on each end of the drum, and a series of blades having their ends attached to said pivotally mounted members, and means engaging one of said pivotally mounted members, so that the members and blades will rotate constantly around the drum containing the eggs, thus maintaining a uniform temperature—a very necessary desideratum.

This patent has been discussed and defined in Buckeye Incubator Co. v. Petersime et al., 19 F.(2d) 721 (6th C. C. A.). The problem presented to the inventor is there stated as follows: "In the advanced stage of incubation, eggs generate and emit heat. They also require more oxygen than eggs in the earlier stages. Proper incubation must take into account the disposition or diffusion of this emitted heat, the carrying off of the carbon dioxide also emitted from the further advanced eggs, and the supplying of the additionally needed oxygen to those eggs, without undue loss of the requisite moisture and uniformity of temperature."

In that case the owners of the Smith patent, No. 1,262,860, brought an infringement suit against the Petersime device here involved. The court found that in the Smith device the heated air was taken into the cabinet at the top and driven by high-speed fans down a central open corridor to the bottom, where it mushroomed against the floor, escaping under the partitions into compartments on either side of the central corridor, and then ascending through these compartments, which contain trays of eggs, and out through openings at the top; that the apparatus of Smith provided for a definite current of heated air passing down this central corridor, and up through the eggs, and directed so as to first strike eggs in the more advanced stage of incubation, giving them the additionally needed oxygen, and carrying the heat units therefrom to other parts of the compartments, thus securing in part, at least, a uniformity of temperature throughout the egg chambers; that emphasis was laid in the Smith claims on a forced circulation of air driven in a definite and predetermined direction. That in this it differed, the court said, from the Petersime process "by which diffusion of heat units and uniformity of temperature is obtained by the slow stirring or agitation of the air in the egg chamber."

And speaking further of the Petersime device, the court said: "The air in the

drum is agitated by a slow-moving stirrer, but there is no defined current created by the agitation, that drives the air first upon the eggs in the more advanced stage of incubation, although it is admittedly so mixed that the heat units from those eggs are diffused throughout the entire drum. There is a thorough mixing of the air, but no application of defined currents."

The Petersime cabinet is not divided into corridors or compartments, but the interior is open. The agitating devices pass around outside the drum, between it and the walls of the cabinet; churn and stir the air and produce a condition of commotion of the air, but with no definite direction.

The significant and novel factors of the patent in question being thus judicially defined by an appellate court, let us examine and compare the Robbins device, bearing in mind that, at the present state of the art, successful mechanical incubation consists of the proper application of ever-changing air of a definite temperature and a proper moisture and oxygen content, and requires the elimination of carbon dioxide emitted from the eggs as they advance in incubation.

The Robbins structure, according to counsel, consists of a cabinet, a shaft journaled in the cabinet, and racks supported on the shaft to rotate therewith, elements found likewise in the Petersime device and long known to the art. Next, a fan mounted in the rear of the cabinet chamber, designed to force currents of air forwardly between and around the egg trays to maintain a proper condition of heat and moisture in the cabinet to facilitate incubation. Both devices, it may be said in passing, have a device for tilting the drum containing the trays of eggs, thus providing the necessary exercise for, or shifting of, the contents of each individual egg.

Robbins also claims that his incubator does not have forced draft, thus, as he says, avoiding the objection that results where the air is driven at high speed, to wit, an uneven introduction of oxygen and uneven distribution of heat and moisture. He further claims that his fans—which are of wide diameter—extending from the top to the bottom of that part of his cabinet containing the egg trays, move slowly and do not drive, but circulate the air. That the air is not driven through the Robbins incubator, but is circulated; that the gentle motion of the slow speed, wide blade fans, propels the air in slow pulsations to every part of the incubator.

This statement of defendant avoids the possible charge that Robbins propels the air through his open chamber in a definite current, and demonstrates that the Robbins structure does not infringe the Smith patent, supra. The air in the Robbins structure cannot move in a defined current or direction for two reasons: First, because his fan, as he is careful to state, at the slow speed he claims for it, is incapable of creating a strong defined current of air, irrespective of what might be possible if the number of revolutions of the fan was greatly increased; and, second, because of the absence of any compartments or arrangement of partitions, etc., to direct or conduct the air in a defined direction, or channel, such as is found in the Smith structure. Mr. Robbins' fan is capable, with slight alterations in the shape and inclination of the blades and operated at a greatly increased speed, of creating a very strong and definite current of air, but no such claim is made in its behalf. The Petersime agitator—the blades of which pass entirely around the outside of the drum—would seem to be incapable of creating a definite current of air, irrespective of the speed at which it is operated. Any increase of speed would merely be increasing the agitation or commotion of the air, without giving it a definite direction. So much for theory!

During the course of the trial, and since the submission of the case and the filing of briefs, the court, by agreement of counsel, and, in their presence, has had the benefit of two demonstrations of the Robbins and the Petersime machines, set up and operated side by side. These consisted of a so-called smoke test and a ribbon test. An oil rag, ignited so as to create smoke, was inserted in each machine, the doors closed, and the respective fan and agitator set in motion. Next, light-colored ribbons were placed in the trays under the same conditions, and the court was enabled, through a glass window, to observe the effect of the air on the smoke and ribbons. According to my observation, it was practically the same in both. The smoke slowly ascended in wavy columns, pulsating back and forth, and did not move in any definite direction.

In the Robbins machine the ribbons, on being placed in several different positions, and with the fan operating, fluctuated or waved back and forth, indicating a pulsating movement of the air, although it might be said that there was a slight indication of a

direct movement. When the same ribbons were placed in the Petersime machine the pulsating movement was a little more pronounced with very little, if any, indication of definite direction to the air current.

These tests showed the same results in both machines, there being, perhaps, a slightly greater agitation of the air in the Robbins than in the Petersime machine. During the smoke test smoke emerged irregularly from the small openings found at the top of both cabinets.

When small thin strips of paper were held close to these openings they fluctuated back and forth, indicating alternate ingress and egress of the air.

This confirms the statement contained in defendant's advertisements that the fans in the Robbins machine when operated slowly—220 revolutions per minute—propel the air in "slow pulsations" "do not drive but circulate the air."

Of course there is considerable difference in form between the Petersime agitator, so-called, and the fan used in the Robbins machine. They are designed to, and do, in fact, perform the same function in the same way, and accomplish the same results. This being so, I think it should be held that the Robbins device is a substantial equivalent of the other within the meaning of the patent law. The fact that there is a difference in form and position is immaterial, where the two agitating devices perform the same offices with no change in principle. Sanitary Refrigerator Co. v. Alexander F. Winters and Basil R. Crampton (Alexander F. Winters and Basil R. Crampton v. Dent Hardware Co.), 280 U. S. 30, 50 S. Ct. 9, 74 L. Ed. ——. The record discloses that Robbins, before he constructed his machine, used and experimented with two Petersime machines.

I am therefore of the opinion that, in respect to the method of changing and moving the air, the Robbins machine is as distinct in principle from the Smith patent as the Petersime device is; that in both the Robbins and Petersime machines the air is stirred, not driven. Furthermore, that the Petersime patent, No. 1,562,787, dated November 24, 1925, must be limited to the one new or novel feature I have indicated.

I fail to see any difference between patent No. 1,646,490, dated October 25, 1927, and the so-called first Petersime patent. I do not believe that the argument in support of its patentability is advanced with much feeling of conviction by counsel. It is urged that plaintiff is entitled to protection for whatever it will accomplish, but it accomplishes nothing that the plaintiff's first patent does not.

It is true there is a difference in the size of some of the parts of the motor, an element, however, that is not new or novel in any sense. By no stretch of the patent law could it be said to be anything more than a difference that any two ordinary mechanics might devise or choose between.

The first Petersime patent comprises a new element in combination with old elements working in a particular way, and the latter patent is for the same element in combination with other old elements operating in exactly the same way. The latter is therefore both in law and equity void.

The questions before us in this litigation are not new, and the opinions in reference thereto, now extant, render a more detailed discussion unnecessary.

In conclusion, I find that the Robbins machine infringes the first Petersime patent, and that the second Petersime patent is void.

A decree agreeable to these views may be submitted.