## ZIMMERS et al. v. ALLIED METAL PRODUCTS CORPORATION.
### No. 5969.

Circuit Court of Appeals, Sixth Circuit.
Nov. 11, 1932.

HOUGH, District Judge, dissenting.

J. King Harness, of Detroit, Mich. (Arthur W. Dickey and Harness, Dickey, Pierce & Hann, all of Detroit, Mich., on the brief), for appellants.

Drury W. Cooper, of New York City (Allan C. Bakewell, of New York City, on the brief), for appellee.

Before HICKS and HICKENLOOPER, Circuit Judges, and HOUGH, District Judge.

HICKS, Circuit Judge.

Suit for infringement of both claims of Hart patent No. 1,476,509, granted December 4, 1923, for "molding" and assigned to appellants. The defenses were (1) lack of invention and (2) noninfringement. Claim 2 is printed.[1]

The court assumed that the patent was valid, but found that appellee had not infringed.

Appellants' structure was primarily intended to be used upon automobiles. It would serve as a drip trough around the roof of the car or as a molding to conceal and render water tight the unsightly joints between the sheet metal sections covering the body of the car. When used as a molding, it was attached as follows: A long, narrow channel-like tenon strip of soft metal was nailed or screwed with its back to the body of the car, concealing the joint. Upon its front side this strip had upstanding deformable parallel walls or ribs running lengthwise and upon opposite sides of the line of nails or screws.

Hart provided a molding strip with curved undercut recesses extending lengthwise. The height of the upstanding ribs exceeded the depth of the recesses in the

---

[1] "2. In a structure as specified, the combination of a support, a long narrow channel-like tenon strip arranged with the back of the channel to lie against the support and the upstanding walls of the channel forming deformable ribs, means driven through the tenon strip back for securing the same to the support and a molding strip having recesses of less depth than the ribs and provided with undercut portions, said recesses being shaped so that when the molding strip is placed on the tenon strip, the ribs being wider than the depth of recesses are turned into the undercut portions to lock the molding strip to the tenon strip."

molding, so that, when the molding was forced over the edges of the tenon strip, the pressure turned the upstanding ribs into the recessed grooves with an interlocking effect.

The novel and fundamental achievement of Hart was that, when his structure was in place, it presented a pleasing and uniform effect not marred by the disadvantages of waves, irregularities, or indentations in the molding.

In the light of the prior art, we think that the Hart structure revealed something more than the skill of an artisan charged with knowledge of what had gone before. We think it was the accomplishment of something beyond what was merely obvious. Appellee introduced a number of prior patents, not as anticipations, but as indicative of the state of the art at the time of the Hart disclosure. The nearest approach to upstanding deformable walls, forced into curved recesses to secure interlocking, is found in the patent to Kenyon, No. 980,965, 1911, but the Kenyon patent was for a furniture caster, a nonanalogous art, wherein the deformable circular shank portion of the axle of the caster was forced into a circumferential groove of the head portion to give the axle a unitary effect, but Kenyon carried no suggestion of molding.

Next in importance is the British patent to Little, No. 137,135, 1920, for "Improvements in the Attachment of Metal Beading to Woodwork," but the Little structure has no "long, narrow, channel-like tenon strip," and, of course, no upstanding deformable ribs. Little attached a metal strip to the body so as to conceal the joint, or, in lieu thereof, located upon the body a line of wood screws having conical projecting heads. His molding had a groove along the center line of its inner face, and its edges were beveled, so that, when it was hammered into place, the beveled edges were bent inwardly until they gripped the dovetailed rib or the projecting screw heads. It is apparent that the necessary hammering is likely not only to injure the molding but to disfigure or damage the body as well.

The patent to McGee, No. 875,552, 1907, for a "Window Screen," a nonanalogous art, carries an outer molding, but it is deformed in assembling. The McGee structure is not adapted for attachment to a body, nor does the molding have undercut portions shaped to receive deformable tenon ribs.

Neither the Burke patent, No. 1,390,013, 1921, nor the British patent to Miller, No. 125,875, 1918, disclose the idea of concealing joints by molding secured to tenon strips supported by a back or body. Both of these patents were for uniting the edges of sheet metal by a crimping process to make a water-tight joint somewhat similar to the joints of the ordinary tin roof.

The Galamb patent, No. 1,477,792, 1923, and the Vetter patent, No. 1,491,120, 1924, both disclose molding construction, but they embody the idea of snap fastening due to the resiliency and springiness of the parts. No deformation of parts is found in either patent. The parts do not interlock. They are easily separated.

*Infringement.* The walls upon appellee's tenon strip are not upstanding in the sense that they are exactly perpendicular to their base. They incline inwardly, and are designed to deform inwardly, but they are sufficiently upstanding to enter the inwardly extending undercut recesses of appellee's molding. Appellants are entitled to a reading of the claims that will protect the substance of their invention. Westinghouse Elec. & Mfg. Co. v. Quackenbush, 53 F.(2d) 632, 634 (C. C. A. 6); Cleveland Automatic Mach. Co. v. National Acme Co., 52 F. (2d) 769, 770 (C. C. A. 6).

We do not think, therefore, that we are required to interpret "the upstanding walls forming deformable ribs" of the patent to mean walls or ribs standing at a true perpendicular. It is obvious that they are meant to incline far enough to turn readily into the recessed portions, otherwise their resistance to the downward pressure of the molding strip would result very probably in nothing more than bruised or battered edges.

Further, the language of the claims is unambiguous, and we find nothing therein requiring the deformable ribs to turn outwardly into the outwardly extending undercut portions of the molding. They are not so limited. The direction in which they are to turn is not of the essence of the invention. To turn the deformable ribs inwardly into inwardly extending undercut recesses of the molding, as accomplished by appellee, is not a substantial departure from the claims. It is a colorable variance only. See Sanitary Refrigerator Co. v. Winters, 280 U. S. 30, 42, 50 S. Ct. 9, 74 L. Ed. 147; Skelton v. Baldwin Tool Works (C. C. A.) 58 F.(2d) 221, 225; United Drug Co. v. Ireland Candy Co., 51 F.(2d) 226, 231 (C. C. A. 8); McKays Co. v. Penn Elec. Switch Co., 60 F. (2d) 762, 766 (C. C. A. 8).

Appellee's combined structure is substan-

tially that of appellants, performs substantially the same function in substantially the same way to obtain the same result achieved by Hart, and this is infringement.

The decree will be reversed, with directions to enter a new decree in accordance herewith.

Judge HOUGH is of the opinion that the decree of the District Court should be affirmed.