## OTTENHEIMER BROS., Inc., et al. v. LEBUWITZ.

### No. 1983.

District Court, D. Maryland.

Oct. 17, 1933.

206

John E. Gardner and Luther Johns, both of Chicago, Ill., and Emanuel E. Ottenheimer, of Baltimore, Md., for plaintiffs.

Edwin S. Clarkson, of Washington, D. C., and John Watson Jr., of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

. This case involves two patents and the alleged infringement thereof. One patent, to Ottenheimer, Reissue No. 16941, reissued April 24, 1928, relates to refrigerators, and particularly to a refrigerator showcase provided with means for illuminating its interior. The other patent also relates to a refrigerator showcase, but is of more limited scope and design, namely, the patent to Peterson, No. 1,206,464, issued November 28, 1916. This patent, more specifically, has for its object "a show case of novel and improved construction having embodied therein a refrigerator, so that the contents of the case may be kept in a fresh, attractive and wholesome condition." (Specifications, lines 19–23).

■ The defenses raised to the alleged in-fringements are the usual ones, i. e., non-infringement and invalidity of the patents because of the prior art. It is axiomatic that the burden of proving infringement rests upon the plaintiff in a case of this kind. I reach the conclusion upon all of the credible evidence in the case that the plaintiff has failed to meet this burden with respect to both of the patents.

■ Taking up the Ottenheimer patent first, I find that it is not infringed by the defendant's device, because I find that there are structural differences which amount to a substantial, and not a mere colorable departure from plaintiffs' device.

I refer to two features of the Ottenheimer patent which are not disclosed in defendant's device, and which I believe are not covered by any substitute in the defendant's device. Those two features are the baffle or screen, and the glass panel.

In order that this opinion may disclose completely what the patent involved really covers, it will be well to quote one of the more typical claims in the patent, there being involved in the present suit thirteen out of fourteen claims. I quote in full the third claim, to wit, "The combination of a display case; means for displaying goods near the bottom of said case; refrigerating means for cooling the goods displayed; artificial lighting means housed in the top of said case and arranged to illuminate the goods displayed; and a baffle mounted in the top of said case beneath said lights, and serving to maintain there an inert body of relatively warm air."

■ It is too well settled to require the citation of authorities that claims in a patent must be responsive to the specifications. They must have a reasonable, sensible coordination with the specifications. They are, of course, entitled to some flexibility of interpretation, depending upon the state of the art in question; and similarly and conversely, the specifications are entitled to a certain flexibility of interpretation. But, generally speaking, the two must coincide. And where claims are actually broader than described in the specifications, then the invention is void.

Applying, then, this fundamental principle at the outset, I am forced to the conclusion that claims 1 and 11 of the Ottenheimer patent are not sufficiently responsive to the specifications, are very much broader than permitted under any reasonable interpretation of the specifications, and that therefore they are void claims.

Claim No. 1 is as follows: "The combina-

tion of a display case having a wide bottom, a top defined by a narrow frame structure, and an inclined, transparent front sustained at its upper edge by said frame structure; artificial lighting means concealed within the top of said frame structure; and refrigerating means arranged to exert a localized refrigerating effect in the lower portion of said case." Claim 11 provides for: "The combination of a display case having a wide bottom, a top defined by a relatively narrow frame structure, and an inclined transparent front sustained at its upper edge by said frame structure; artificial lighting means housed within the top of said frame structure; and refrigerating means operative in the lower portion of said case."

We find in the specifications, page 1, line 17, and following, this description for the construction of the Ottenheimer patent, and a declaration in no uncertain terms of what is intended to be accomplished: "I locate the lamps in a portion of the frame structure of the case at the top where they are completely housed and may readily be concealed from the customer. Though they are then in effect within the case, they are isolated from the interior of the case by a glass panel through which their light is projected." And quoting further, lines 32–45: "The glass panel below the lamps serves to reduce the transmission of heat, but alone is not always adequate to effect this result. Accordingly I so locate the lamps and so arrange certain screens or baffles that the circulation of air within the refrigerator does not pass close to this glass panel. Stated differently, I maintain immediately below the panel a layer of inert or non-circulating air which serves effectually to retard the transfer of heat and which, as it becomes heated, inherently seeks a position in the top of the case outside the path of circulation within the case."

In these claims there is no adequate reference to such a structure or apparatus as thus described in the specifications. There is a reference to an artificial lighting means housed within the top of the frame structure, but no reference to a baffle, or to a glass panel, and there is only a very general statement providing for refrigerating means that will operate in the lower portion of the case, or that will exert a refrigerating effect in the lower portion of the case, all of which is obviously of the broadest character.

We now turn to the remaining claims, Nos. 2, 3, 4, 5, 7, 8, 9, 10, 12, 13, and 14 of the Ottenheimer patent (claim No. 6 being removed from the controversy). Each of these claims calls for artificial lighting means either housed, isolated, concealed, or mounted in the top frame structure, by means of a glass panel or partition; and all but claims 4, 9, 10, 12, 13, and 14 refer specifically to the baffle.

Without referring further to the specific language of the claims or of the specifications, it is self-evident that the panel, if not also the baffle, is a fundamental part of the plaintiffs' device. One reading of that part of the specifications which I have already quoted, coming at the beginning of the specifications, is sufficient to indicate this to be a fact in connection with the formation of the layer of inert or noncirculating air which serves effectually to retard the transfer of heat, the latter being one of the primary objects of the device. If this be true, and if the defendant's device does not have substantially the equivalent of those factors, then it is self-evident that there is no infringement.

What do we find, then, in the defendant's device with respect to these two distinguishing features in the plaintiffs' device? There is no baffle as such, and there is no glass partition or panel. The plaintiffs assert that there is the equivalent, a mere substitute, a colorable departure from the structure embodied in plaintiffs' device, in that the solid frame of the front wall is brought down far enough to serve the purpose of the baffle in deflecting the air currents; and it is further claimed with respect to the glass partition, that its purpose is substantially accomplished by the glass shades around each of the electric light bulbs in the top frame structure.

But I do not think that those so-called equivalents are actually equivalents. I do not find that they do accomplish the purpose sought to be accomplished in the Ottenheimer patent, even though they may be intended to accomplish the same purpose. I do not believe that it is possible for them to do so, if for no other reason than that there is no way in the design of the defendant's box to prevent the air currents from circulating in and around, at least to some extent, the various lights. That means, in other words, that there is no structure whereby a layer of inert or noncirculating air is preserved, completely separate, from the lights, that is from the heated chamber, which is effected in the plaintiffs' device by the combination of baffle and solid glass partition.

One can find some language in almost every patent infringement decision stating

general principles of patent law which would seem to have application to either side of a given case. But we can determine whether a given decision is, in fact, applicable to another set of facts only by analyzing those facts and seeing whether they are indeed parallel. The plaintiff relies on such cases as Sanitary Refrigerator Company v. Winters, 280 U. S. 30, 50 S. Ct. 9, 74 L. Ed. 147. But I find nothing in that case inconsistent with my conclusions here. The Supreme Court in that case was considering entirely different things, latches for refrigerator doors. Here we have a refrigerator showcase. The same general principles apply, to be sure, but what another court may find differentiates one latch from another, does not necessarily control in determining what differentiates one of these refrigerating devices from another.

The Supreme Court in the Sanitary Refrigerator Company Case said that "despite the changes in the Dent latch from the Winters and Crampton structure we find that the two devices are substantially identical, operating upon the same principle, and accomplishing the same result in substantially the same way, and that the slight change in the form of the Dent latch is merely a colorable departure from the Winters and Crampton structure." Page 41 of 280 U. S., 50 S. Ct. 9, 12.

If I felt that in the present case both devices accomplish the same result in substantially the same way, and that the change in the form as accomplished by the defendant's devices was merely a colorable departure from the plaintiffs' device, then I would say that we had a case which was to be directly governed by the Sanitary Refrigerator Company Case, and like decisions. But I think I have already said enough to indicate that I do not believe the same result is accomplished, or that the change in the form of the device is slight. I feel that the same result cannot be accomplished by the defendant's device as by the plaintiffs' device, because of the structural differences just analyzed, and which thus amount to more than a colorable departure from the plaintiffs' structure.

In this connection it must be borne in mind that we are not dealing with a pioneer patent. If it were a pioneer patent, it would be entitled to a wide range of equivalents. But we are dealing with mere improvements upon an art, which, if not crowded, nevertheless was well known in its primary features before the Ottenheimer device came into the field; and, therefore, we are to be limited practically to the structures or instrumentalities that have been disclosed.

Also, it is important to bear in mind that we are not here dealing with a function, but rather with a device, a structure; in effect, a machine; and it is elementary that the mere function of a machine is not patentable, but that the claims of the patent must be construed in the light of the specifications and drawings to which they relate, and are not to be given an interpretation so broad as to cover the function of the machine patented, and thus protect against every possible machine with a like function.

I mention that fact because in this patent, as in the Peterson patent, to which I will refer in a moment, it may be said that the function sought to be obtained and actually attained by the defendant's device, is the same as that attained by the plaintiffs' device, in so far as the general circulation of cold air is concerned.

But we are not dealing with a patent for the function of circulating cold air in a certain way. We are dealing with a device which affords a certain method of bringing about that circulation of cold air; and it may be admitted that the circulation is similar, but the amount of heat or the amount of cold that is conveyed through the compartments in the respective devices may be entirely different; and I think it is bound to be different, for the reasons I have just stated, in the Ottenheimer patent from what it is in the defendant's device.

I understand the law to be that merely to substitute superior for inferior materials in making one or more or all of the parts of a machine or a device is not invention, although the substitution may be of materials that are both new and useful in a high degree. But it is also the law that, if the substitution involves a new mode of construction, or if it develops new properties and uses, or produces a new mode of operation, or results in a new function, or when it is the first practical success in the art in which the substitution is made, or where the practice shows its superiority to consist not only in greater cheapness and greater utility, but also in more efficient action, it may amount to invention.

Now, if any one of these things is true with respect to the defendant's device, it may be patentable. But, certainly, it is distinctly different, and, if that be true, such device cannot be said to infringe something from which it is distinctly different in one of these important respects that I have enumerated.

Coming then, finally, to the Peterson

patent which, because of its simplicity, we should, perhaps, have discussed first, I find, as previously stated, that also there has been no infringement of that patent.

The Peterson patent comprises only one claim, as follows: "A show-case refrigerator, comprising an ice receiving chamber having a partially open top-side and insulated walls forming the remaining sides and bottom, a display case mounted on the front portion of said ice receiving chamber and over the open portion of the top side, said ice receiving chamber embodying a deep rear portion, having an ice receiving opening in its top side and a relatively shallow front portion, the bottoms of said portions being coincident with each other, and a horizontal shelf having perforations adjacent its front edge, and forming a top of said shallow portion and the bottom of said display case and provided at its rear edge with an upstanding flange to partially separate the display case from the deep rear portion and to provide an air passage at its top edge, the space beneath said shelf being in open communication with said deep rear portion to form a continuous ice receiving chamber extending the entire area of the bottom of said case and which is accessible through said ice receiving opening in the top of said deep rear portion."

A rather persuasive argument may be advanced that the prior patent to Farson, No. 275620, issued April 10, 1883, anticipates Peterson. But I am inclined to the view that it does not, because the lower chamber in the Farson device is not intended to be, and cannot be, because of its shallowness, an ice chamber. It is merely a chamber for the passage of cold air. I think this distinction is sufficiently vital to answer conclusively any contention that Farson anticipates and invalidates Peterson. Also it should be noted that the Farson patent does not embrace, and is not intended to embrace, any showcase features. In any event, when we turn to the question of whether Peterson has been infringed by defendant's device, I conclude that it has not, because I believe that the substitution of the grid, the method of placing the grid in the device, the removability of the grid, resulting in the freer admission or circulation of air, all of these things I conclude

are not merely colorable, but material departures, from the Peterson structure.

Here again it must be borne in mind that we are not dealing merely with a function, but with a device which aims to accomplish a circulatory system of cold air in a refrigerator. And I believe that although the circulation of the cold air may at times be substantially the same, such would not always be the case, particularly if the pans, placed closely together, are not used on the grid. But this is not conclusive. The question is rather whether the Peterson specifications and claim really include defendant's structure. I am unable to find that they do. The Peterson structure would have to be rebuilt in order to provide this grid-iron device of removable character. Defendant's device may be a better one, or it may be a poorer one, but I do not believe we can say that it is a mere equivalent, in an art of this kind.

The Peterson patent expressly calls for a fixed floor, or bottom, over the small ice chamber, and for a fixed baffle at the inner end thereof. I fail to see that you can call an equivalent of that a device which has none of its salient features, which is removable, which at a glance obviously permits of the entrance of vastly more cold air than comes through the limited perforations at the front end of the permanent bottom of the Peterson patent.

I do not decide that any one of these elements, if isolated, would in and of itself be sufficient to distinguish the two devices from the infringement standpoint, but applying a practical, common sense test to the defendant's device, I conclude that it is materially different, otherwise we would be giving to the Peterson claim a scope which I do not think is warranted by anything to be found in the specifications.

I am the more inclined to this view, because I think that the single claim in the Peterson patent is so broad, and indeed so ambiguous in part of its language, that if the patent is to be maintained as valid, we are bound to limit it to a more restricted application than the inartistic language of the claim might possibly warrant.

For the foregoing reasons, I will sign an order dismissing the bill of complaint.