## KLEIN v. FINKELSTEIN.

District Court, S. D. New York.
Feb. 27, 1939.

Morris Kirschstein, of New York City, for plaintiff.

Mock & Blum, of New York City, for defendant.

LEIBELL, District Judge.

I have signed Findings of Fact and Conclusions of Law, drawn in part from those submitted by counsel for the respective parties. I have made my own additions to and modifications of the Findings and Conclusions submitted. The Bill of Complaint is dismissed, for want of infringement, with costs.

Plaintiff was the owner of U. S. Patent No. 2,004,760, granted on June 11, 1935 on an application filed January 7, 1935, and plaintiff is the owner of reissue patent No. 20,115 granted on September 22, 1936 on an application filed on May 7, 1936, which is a reissue of No. 2,004,760.

Defendant is the owner of U. S. Patent No. 2,039,789, granted on May 5, 1936 on an application filed October 19, 1935 and defendant has been operating under said patent.

Plaintiff's hair curler is described in the Finding of Fact numbered "4" as follows: "The hair curler of the patent in suit comprises a hair winding bar and a spring hinged hair gripping arm. Each of these members is provided with a finger piece; and they are mounted for rotation together within a collar. Both the winding bar and hair gripping arm extend through this collar so that the finger pieces may be freely manipulated. This construction permits the convenient and easy manipulation with one hand of the spring pressed finger piece to raise or release the hair gripping arm, and also the convenient and easy manipulation with the same hand of both finger pieces to rotate the hair winding bar and the hair gripping arm together. A hair retaining member (a band) is joined to the collar and may be detachably closed upon the winding bar by means of a knob engaging in the open end of the hair winding bar. The closed position of the hair retaining member is its normal position, and in winding the curl, one hand of the operator holds the knob to keep the hair retaining element stationary while the other hand rotates the finger pieces of the hair winding bar and hair gripping arm."

Defendant's "Pro-Curler" is described in Findings of Fact numbered "21" and "22" as follows:

"Defendant's "Pro-Curler" comprises a hair winding bar and a concave gripping arm pivoted to the hair winding bar. Both the hair winding bar and the hair gripping arm extend to the other side of the pivot point and terminate in finger pieces or a spring button. The hair gripping arm is spring pressed to the winding bar. A framing or collar is mounted around the bar and arm at the pivot point to permit rotation of the bar and arm therein. A metal bar is rigidly attached to the framing and is disposed parallel to, and a slight distance away from, the winding bar. A finger grip is provided at the free end of the metal bar for holding the same stationary during winding. Both the metal bar and hair winding bar are provided with a bore which is adapted to receive a hair pin or bobbie pin."

"In accordance with defendant's circular (Exhibit 'A'), directions are given to use the 'Pro-Curler' by first inserting the legs of a bobbie pin into the bores in the metal bar and winding bar. The free end of a tress of hair is next gripped between the winding bar and hair gripping arm and the same wound by turning the stem at the end of the winding bar. After this, the curl is slid off the winding bar and on to the bobbie pin which holds the same in curled condition."

After the completion of the curling operation, defendant's device is intended and adapted and designed for immediate removal from the hair, while the strand of hair is maintained in curled condition by the hair pin or bobbie pin which is detached from defendant's alleged infringing device immediately at the completion of the curling operation.

Plaintiff's patented device must remain applied to the strand of hair subsequent to the curling operation, until the strand of hair has been set into the desired curl. If a woman does not have a hair drier, plaintiff's patented device must remain on the hair for five to ten hours and preferably over night.

Plaintiff's curler costs 5 cents. Defendant's "Pro-Curler" originally cost $1, now 50 cents.

Plaintiff's patent must be narrowly ·construed. The hair curler part of plaintiff's device is very old. The retaining band is also old and is shown in prior patents. Several unpatented devices embodying this feature were sold in great numbers, years prior to plaintiff's patent. (See Ex. 4 manufactured by H. Goomar & Sons, Inc., as far back as 1929; and Exhibit 7, in use since 1934, manufactured by several companies including plaintiff.) Further, the location of a catching device, to hold one end of the band in the end of the hair winding bar, is shown in both Exhibits 4 and 7. These bands, extending from one end of the hair winding bar, are pivoted to the hair winding bar at or near the point where it joins the hair gripping arm. (Exs. 4 and 7.)

Plaintiff's device showed an advancement or improvement over the two hair curlers, Exhibits 4 and 7, in that the hair retaining band of plaintiff's device was attached to a collar, fitting around the hair winding bar and the hair retaining member, so that the two latter could be made to rotate within the collar and the hair retaining band, while the band was held in place at the other end of the hollow hair winding bar.

But· even the construction of the hair retaining band and the hair winding bar in such way as to permit one to rotate in respect to the other, had been anticipated and shown in Sexton's patent No. 1,626,254 issued April 26, 1927. The drawings accompanying Sexton's patent show the fixed end of the retaining bands in two positions: (1) attached to a rotatively adjusted head that had a stem inserted into the end of the hair winding bar; and (2) attached to the ears of a ring, movable around the hair winding bar, with a stem extending from outside the ring into the curler bar. In (1) the head or stem turned with the hair retaining band; in (2) the stem turned with the hair curler bar.

Plaintiff's advancement over the Sexton patent was two-fold: (a) plaintiff enlarged and lengthened the size of the stem in the second position so that it could be more securely gripped by the fingers and the hair curler bar more easily turned within the hair retaining bands, and (b) plaintiff had the hair gripping arm pivot on the hair winding bar at the point where the bands were attached to the ring. The Sexton patent had the hair gripping arm pivot at a point on the hair winding bar

within the hair retaining bands and near the ring. Plaintiff's device was easier to ·handle and operate than the Sexton patent, but the rotary effect was obtained in each by the use of a ring or collar to which the hair retaining band was attached, permitting the hair curler to be turned within the ring or collar.

Plaintiff's contention that defendant's device infringes really comes down to this: that the hair winding bar and hair gripping arm of defendant's device rotate within a collar located between the ends of the bar. Yet that rotating feature was disclosed, although imperfectly, in Sexton's patent.

Plaintiff's contention that the bobbie pin, when inserted in the hollow ends of the hair winding bar and the hollow end of a second rigid member, with a finger grip at the outer end and attached to the collar at the other, constitutes with them a hair retaining band within which the hair curler rotates and for that reason infringes plaintiff's patent, is without merit. It is clearly contrary to the facts. Likewise plaintiff's argument that the rigid hollow member (with the finger grip) attached to the collar on defendant's device performs a hair retaining function similar to plaintiff's hair retaining band is also unfounded. It may be that the hollow member attached to the collar would temporarily, while resting against the head, prevent the curl from unwinding, if the operator were obliged to release her grip on the device and reach for a bobbie pin. That would at best be a position of the device before the operation for which it was designed had been completed. But to base infringement upon any such temporary position of defendant's device would disregard its basic function and all the steps necessary in its operation to perform that function.

Plaintiff argues that such a temporary position of defendant's device would not be infrequent because (1) the bobbie pins fall out of the device while the curl is being wound and (2) professional operators in beauty parlors do not insert the pin until the winding operation is completed. As to (1)·I noticed at the trial that while the bobbie pin was in place in the device and the hair was actually being curled the bobbie pin did not fall out. It was only when the device was held in the hands and no hair was being curled and the curler rod was turned at an excessive speed that the bobbie pin was dislodged from its position in the hollow stems of the hair winding bar

and the rigid member. As to (2) the fact that the bobbie pin might be inserted in the hollow stem by professional operators after the curl was wound is not material to the issues in this lawsuit. Defendant's assignor foresaw that and mentions it in describing an optional use of his patented device. Nor does the fact that some operators might prefer to use an invisible hair pin to hold the curl after it is wound on defendant's device affect the issues herein.

The printed directions for using defendant's "Pro-Curler" show as the initial step—"1. Spread bob pin apart and insert ends into holes as far as they will go." The holes are shown at the end of the hair winding bar and at the end of the rigid member with the finger grip. Even the professional operators use defendant's device in that way, although some may at times depart therefrom when loose or flat curls are desired and an invisible hair pin is used at the end of the hair curling operation.

Defendant's assignor in the patent describes the use of the "Pro-Curler" as follows:

"In order to use this device, the end of the lock of hair is clamped between the members 8 and 9 and then turned relative to the member 14, while the hair pin H is in the position illustrated in fig. 6. After the lock of hair has been curled, the associated members 8, 9 and 14 can be longitudinally removed from the lock of hair, so that the hair pin H remains in operative position, to hold the lock of hair in its spirally wound form". 8 is the hair winding bar; 9 is the hair gripping arm; 14 is the hollow rigid member, parallel to the hair winding bar, attached to the collar at one end and having a finger grip at the other end, where one prong of the bobbie pin is inserted.

Defendant's "Pro-Curler" differs radically from plaintiff's hair curler. While both of them have as their purpose to curl the hair, their structure and mode of operation are to say the least "substantially different". Plaintiff's hair curler has hair-retaining bands; defendant's has none. Defendant's device uses bobbie pins to hold the curl in place; plaintiff's does not. Plaintiff's device remains on the hair after the curl is wound and until the curl has set—which may take five to ten hours. Defendant's device does not remain on the hair once the curl is wound. To wind ten curls a lady would have to use ten of plaintiff's devices; but defendant's single device may be used over and over again to wind ten or any number of curls, which after being wound are held in place by bobbie pins or hair pins. The mechanism by which the curl is held in place is fundamentally different in the two devices. The mechanisms by which the curls are wound in both devices is the old fashioned hair curler well known in the prior art. The rotation of one member of a device within and in respect to another, by means of a sleeve, collar, ring or swivel is also old and was shown in the prior art of hair curlers in Sexton's patent. Defendant's device, in any respect in which it resembles plaintiff's has an equally common origin in the prior art. But they differ in many respects as above indicated. And in their mode of operation they are unquestionably substantially different.

As was stated in Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U.S. 399, 413, 414, 25 S.Ct. 697, 702, 49 L. Ed. 1100: "But in determining infringement we are entitled to look at the practical operation of the machines. * * * If the device of the respondents shows a substantially different mode of operation, even though the result of the operation of the machine remains the same, infringement is avoided."

In my opinion, in the case at bar we cannot go even as far as to say that the result of the operation of the machines is the same. The result, when plaintiff's device is operated, is a curl wound up in the device and held in place by the device itself. The result obtained when defendant's device is operated, is a curl held to the head by a bobbie pin.

In the Cimiotti case it was also stated at page 410 of 198 U.S., 25 S.Ct. at page 702, 49 L.Ed. 1100: "And it is equally true that, as the inventor is required to enumerate the elements of his claim, no one is an infringer of a combination claim unless he uses all the elements thereof." See, also, Wichita Visible Gasoline Pump Co. v. Clear Vision Pump Co., 8 Cir., 19 F.2d 435, certiorari denied 275 U.S. 530, 48 S.Ct. 28, 72 L.Ed. 409.

Even if we were to assume that plaintiff and not Sexton was the inventor of the element of a hair curler rotating within a ring or sleeve, what the plaintiff patented was a combination of elements of which that was

only one, in which combination the hair retaining band was an equally essential element. Defendant's device has no hair retaining band.

Defendant's device does not perform "substantially the same function in substantially the same way to obtain the same result" as plaintiff's. Union Paper Bag Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935.

In view of the state of the art when plaintiff's patent for a hair curler was issued, "the invention must be restricted to the form shown and described by the patentee and cannot be extended to embrace a new form which is a substantial departure therefrom". Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42, 50 S. Ct. 9, 13, 74 L.Ed. 147. It could not with reason be argued that defendant's device is "but a mere colorable departure" from plaintiff's. It is thoroughly dissimilar.

No infringement was shown in this case. The bill of complaint is accordingly dismissed. Submit decree on notice.