NEWMAN, Circuit Judge,
with whom RADER, Chief Judge, and LOURIE, Circuit Judges,
join, concurring in denial of the petition for rehearing en banc.
I join Chief Judge Rader in his reminder, lest we forget, of the incentive purposes of the patent grant; and I join Judge Lourie in pointing out that, contrary to the dissenters’ theory, “dominating” patents can dominate infringing equivalents. I write further in response to the dissenters’ argument that this court should discard United States precedent and readjust the balance between the inventor and copier. Such a shift, in the hope of reducing the price of existing products through enhanced competition, diminishes the economic incentive to create new products. This realignment of the economics of innovation should not be done casually.
The Supreme Court has observed that “the doctrine of equivalents renders the *1377 scope of patents less certain,” and that “this uncertainty [is] the price of ensuring the appropriate incentives for innovation.” Festo Corp. v. Skoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 732, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002). It is evident that:
A national economic policy that weighs on the side of fostering development and investment in new technology will have a different approach to the law of equivalency than an economic policy aimed at facilitating competition by minor change in existing products. Any tightening or loosening of access to the doctrine of equivalents shifts the balance between inventor and copier.
Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 344 F.3d 1359, 1379 (Fed. Cir.2003) (en banc) (Newman, J., concurring in part, dissenting in part).
The dissenters’ position is that if any modification or substitution is made in any part of a patented product or process, and that modification or substitution is separately patented, this frees the entire product or process from the reach of the doctrine of equivalents, whatever the evidence of equivalency. According to the dissenters, it is irrelevant whether the substitution performs substantially the same function in substantially the same way to achieve the same result.
The Siemens patent is for positron emission tomography scanners that use cerium-doped lutetium oxyorthosilicate scintillator crystals. The product charged with infringement replaces 10% of the lutetium with yttrium, an element acknowledged to have similar properties. After an eight-day trial, the jury found that the cerium-doped oxyorthosilicate crystals with 90% lutetium and 10% yttrium were equivalent to the cerium-doped oxyorthosilicate crystals with 100% lutetium, on the jury charge that:
One way to decide whether any difference between the 10% Y LYSO and LSO crystals are not substantial is to consider whether, as of the time of the alleged infringement, the 10% Y LYSO crystal performed substantially the same function, in substantially the same way, to achieve substantially the same result as the LSO crystal in the asserted claim.
J.A. 450. It is not disputed that there is substantial evidence to support the jury’s finding of equivalency. Instead, the dissenters propose that no infringement can be found as a matter of law, because the crystals with 10% yttrium were the subject of a separate patent.
The dissenters propose that the separate patenting of an equivalent automatically liberates the subject matter from infringement, whatever the facts of the substitution. The consequences for the innovation incentive are not addressed. The patent law seeks “a careful balance between the need to promote innovation and the recognition that imitation and refinement through imitation are both necessary to invention itself and the very lifeblood of a competitive economy.” Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 146, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989). The doctrine of equivalents is part of that balance, and any change in its application is a matter of national economic policy.
Precedent recognizes that an equivalent substitution may or may not be an obvious variant. The court in this case observed that the principles of obviousness and of equivalency “require different analytical frameworks.” Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc., 637 F.3d 1269, 1282 (Fed.Cir.2011). In Warner-Jenkinson Co. Inc. v. Hilton Davis Chemical Co., the Supreme Court explained that “Equivalence, in patent law, is not the prisoner of a *1378 formula and is not an absolute to be considered in a vacuum.” 520 U.S. 17, 24-25, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) (quoting Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 609, 70 S.Ct. 854, 94 L.Ed. 1097 (1950)). In Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147 (1929) the Court held that infringement by an equivalent was not precluded by the presence of a separate patent on the equivalent. The fact of equivalency is found on the evidence in the particular case, for “it is well established that separate patentability does not avoid equivalency as a matter of law.” Fiskars, Inc. v. Hunt Mfg. Co., 221 F.3d 1318, 1324 (Fed.Cir.2000); see also Atlas Powder Co. v. E.I. du Pont De Nemours & Co., 750 F.2d 1569, 1580 (Fed.Cir. 1984) (“Equivalence does not require that the claimed invention and accused product have identical results; the results can be substantially the same and the accused product can be an improvement.”).
The dissenters’ position is not the law. Nor has such a change of law been proposed in the present “patent reform” era. “The strength of entrepreneurship in the U.S. continues to rest in the ability to maintain a culture and infrastructure that is best suited to its development.” Sang M. Lee & Suzanne J. Peterson, Culture, Entrepreneurial Orientation, and Global Competitiveness, 35 J. World Bus. 401, 411 (2000). A policy change that shifts the balance between the copier and the originator is a matter of economic consequence.