The SPEE–FLO MANUFACTURING CORPORATION

v.

BINKS MANUFACTURING COMPANY.

Civ. A. No. 64–H–95.

United States District Court
D. Texas,
Houston Division.

Feb. 21, 1967.

H. F. McNenny, McNenny, Farrington, Pearne & Gordon, Cleveland, Ohio, and Edward C. Hutcheson, Hutcheson, Taliaferro & Hutcheson, Houston, Tex., for plaintiff.

Thomas R. Juettner, Gary, Parker, Juettner & Cullinan, Chicago, Ill., and Tom Arnold, Arnold & Roylance, Houston, Tex., for defendant.

## OPINION

SINGLETON, District Judge.

The above entitled and numbered cause, having been tried before the Court without a jury, at the close of the evidence and after hearing arguments of counsel, this Court adopts the following opinion as its findings of fact and conclusions of law.

Plaintiff, Spee-Flo Manufacturing Corporation (Spee-Flo), a Texas corporation, is engaged in the manufacture and sale of spray painting equipment and has its principal place of business in Houston, Texas. Defendant, Binks Manufacturing Company (Binks), a Delaware corporation, is also engaged in the manufacture and sale of spray painting equipment and has its principal place of business in Chicago, Illinois.

The complaint is brought under the Patent laws of the United States, Title 35 U.S.Code, and under Title 28 U.S.C. §§ 1338(a) and 1400(b).

Spee-Flo is the owner of the patent in this suit. The patent was granted September 19, 1961, on an application by Gustave S. Levey and Stanton F. Harvey for a "spray gun" for use in airless spray painting. The patent is No. 3,000,576. Spee-Flo alleges infringement of claims 1 to 6, inclusive, and 8 of the patent.

Jurisdiction and venue have been stipulated.

The complaint seeks a permanent injunction and damages for the alleged infringement. The complaint also seeks exemplary damages on the grounds that the alleged infringement is willful and flagrant. The validity of the patent is not in issue in this case. Binks asserts as its defenses to the complaint (1) the scope of the patent, (2) the lack of infringement by Binks' devices, and (3) as affecting these two issues, new prior art patents, publications and public uses not presented in the prior litigation set out below.

The patent in question was the subject of a similar action tried in this District in 1964, Spee-Flo Manufacturing Corp. v. Gray Co., Inc., 237 F.Supp. 616, 617 and 255 F.Supp. 618. In that case Chief Judge Connally held the patent valid, and that the claims in controversy, i. e., claims 1 to 6 inclusive, and 8, were valid; that Gray Company had infringed each of claims 1, 2, 3, and 8, and had induced infringement of, and

was guilty of contributory infringement of, claims 4, 5, and 6. Chief Judge Connally's opinion was affirmed by the Court of Appeals for the Fifth Circuit in an opinion by Chief Judge Tuttle reported in 361 F.2d 489.

Chief Judge Connally, in his original opinion and in his supplemental opinion in the Gray Company case, fully and completely describes the patent, the background leading up to the invention, the operation of the device (spray gun) and the contribution this device made to the business of spray painting. For this reason, this Court does not feel it is necessary to again detail these factual aspects of the case.

The thrust of Binks' approach in the case before this Court is that the Gray Company case should not be followed here because evidence relating to prior art devices were offered here which were not offered in the Gray Company case and based upon this evidence this Court should hold that the scope of Spee-Flo's device should be restrained within the narrow limits solely affecting a pre-orifice with an axial length at least twice its diameter. In other words, what is sought here is a re-argument and a reconsideration of the Gray Company case in the light of the prior art evidence offered here and in the light of evidence relating to the limited scope of Spee-Flo's device. Miles v. Matthews, 171 F.2d 38 (5th Cir., 1948).

A brief summary of the spray gun in question is necessary. The result sought was to find a way of spraying paint with an airless spray gun that would give a uniform and consistent spray pattern. This result was particularly important with respect to fine finishing. The invention of the patent in this case resulted from an accidental discovery by the patentees that a decrease in the pressure in the chamber between the valve and the spray nozzle in an airless spray gun resulted in an improved spray pattern. One method of accomplishing this decrease in pressure was by mounting a "pre-orifice," having a hole substantially equal in area to the area of the nozzle opening, between the valve and the nozzle opening. There are different ways of supporting the pre-orifice. One way, and the method employed by Spee-Flo in commercializing this device, is to contain the pre-orifice as an integral part of the valve member. Another way, and the way employed by Binks, is to contain the pre-orifice in a removable disc, the disc being secured between the valve member and the nozzle. Spee-Flo also has a patent claim covering this method of mounting the pre-orifice.

The use of a pre-orifice in a device similar to Spee-Flo's device was not within itself new; however, pre-patent pre-orifice devices were generally much larger in cross-sectional area than the spray orifice, and with the pre-orifice much larger in cross-sectional area than the spray orifice, paint reached the spray orifice under high pressure and with low velocity and was accelerated in the nozzle opening to the high velocity and low pressure of the spray fan. This resulted in the formation of a vena contracta at the discharge site of the spray nozzle.

A vena contracta is described in Webster's Dictionary as "Any of the contracted parts of minimum cross section of a jet of fluid discharging from an orifice, especially the one nearest the orifice." To this Court, with respect to this case, the vena contracta caused an over-concentration of paint as the paint came out of the spray nozzle, resulting in a non-uniform application of paint on the object being spray painted. In order to accomplish the desired results, this vena contracta had to be eliminated at the spray nozzle opening. The patentees found that when the pre-orifice was reduced to approximately the same size as the spray orifice, the paint moved through the pre-orifice with a reduced pressure and an increased velocity and in the form of a submerged jet and traveled through the chamber as a submerged jet until it reached the spray orifice. The vena contracta was eliminated at the spray nozzle opening and was formed instead at the pre-orifice

back in the chamber. Uniform and complete atomization was thus achieved and the desired feather-edged spray pattern resulted.

■ This Court agrees with Chief Judge Connally that the real contribution of the Spee-Flo invention was the ascertainment and recognition of the fact that, if the pre-orifice is reduced in area to approximately the same area as the spray orifice, the desired improvement in the spray pattern is accomplished. Spee-Flo Mfg. Corp. v. Gray Co., Inc., supra, 237 F.Supp. 616, 617, 619 (1964).

Binks, in August of 1960, started selling a pre-orifice disc described as a "sapphire spray insert." This insert consisted of a plastic washer containing a brass cup supported at its center, with a watch jewel having a small central hole through it supported in the brass cup. The brass cup has a cylindrical portion projecting forwardly from the washer and fitting in a retainer ring secured in the spray nozzle immediately behind the carbide tip having the elongated sharp-edged spray opening therein. A passageway of uniform diameter runs downstream from the jewel, through the brass cup, and into the chamber. Binks' first style inserts were sold with five different sized holes ranging from .010 of an inch to .026 of an inch for use with nozzles having spray openings of matching area. Subsequently, Binks offered a second style insert in which the brass cup is moved back into the plastic washer and in which the passageway through the brass cup downstream from the jewel is deeply chamfered, forming a conical passage to the chamber. Thereafter, Binks also manufactured and sold first and second style inserts for use in airless electrostatic spray guns. These inserts operate in the same way and get the same results as Binks' regular inserts.

*Tests of Infringement*

■■ In determining whether an accused device or composition infringes a valid patent, resort must be had in the first instance to the words of the claim. If accused matter falls clearly within the claim, infringement is made out and that is the end of it. Graver Tank Co. v. Linde Air Products Co., 339 U.S. 605, 607, 70 S.Ct. 854, 94 L.Ed. 1097 (1949).

■ In addition to infringement by directly reading upon the words of the claim, a device may infringe a patent through the doctrine of equivalence. This doctrine expresses a preference for substance over verbiage, recognizing that a device might incorporate the true achievement of the claim in question without literally reading upon it. All instances of this will not constitute infringement, nor will all patents be awarded the same range of equivalence. Generally speaking, one device is an infringement of another if it performs the same function in substantially the same way to obtain the same result. Sanitary Refrigerator Company v. Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147 (1920).

■ The range of equivalence to be awarded a patent will depend on the circumstances. Binks takes the position that the patent in suit is but one of many patents of its type, that the "art" is "crowded," the "field" is "narrow," and therefore the range of equivalence must be severely limited.

Spee-Flo's position is that the contribution of their patent to the art is a substantial one, and, thus, the patent deserves a broad range of equivalence.

■ It is true that many patents have been issued in the field of paint spraying. However, the range of equivalence depends upon the extent and nature of the invention. If the invention is broad or primary in its character, the range of equivalence will be correspondingly broad, under the liberal construction which the courts give to such invention. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 414, 28 S.Ct. 748, 52 L.Ed. 1122, (1907), citing Miller v. Eagle Manufacturing Co., 151 U.S. 186, 207, 14 S.Ct. 310, 38 L.Ed. 121 (1894). The result of the pat-

ent in suit has been to make airless spraying processes usable for the first time in fine finishing. This is a substantial and decided advance in the art, and the patent is entitled to a liberal construction and a broad range of equivalence.

### The Question of Infringement

The general combination of gun, spray tip, and pre-orifice is not new. The question of infringement is to be decided by scrutinizing Binks' alleged infringing device in the light of what is claimed as to the pre-orifice and its relation to the spray tip.

### Claim 4

 Claim 4 is the broadest of the claims in suit. It claims a means between the valve port of the gun and the nozzle opening (or spray tip) (1) including an axially extending circular bore with a diameter smaller than the paint chamber, and connecting the valve port with the paint chamber (2) said means creating a compact submerged jet of liquid paint moving axially through the paint chamber and into the nozzle opening with a velocity and pressure substantially equal to the velocity and pressure of the paint passing through the nozzle opening (3) whereby the paint emerges from said nozzle opening as an atomized mist substantially uniformly distributed in an elongated spray pattern having feathered edges.

It is obvious that all of Binks' devices read directly on this claim and are infringements of this claim. Binks challenges claim 4 on the ground that it is too broad, in that it nowhere mentions the critical area-matching principle found to be the contribution of the patent in suit. The Court disagrees. The claim describes a circular bore which creates a submerged jet of a velocity and pressure, as it moves through the paint chamber, substantially equal to the velocity and pressure of the paint as it passes through the spray tip. The Court can conceive of no other way for this to be achieved than through application of the area-matching principle. The paint, before entering the pre-orifice, has a high pressure and a low velocity. After passing through the pre-orifice (that is, in the paint chamber), it is a submerged jet, having a low pressure and high velocity (substantially equal to its pressure and velocity as it passes through the spray tip). This must be the result of some structural characteristic of the circular bore. That structural characteristic can only be the cross-sectional diameter.

### Claim 3

Claim 3 describes the "insert" type of pre-orifice (not actually marketed by Spee-Flo) as a means to provide a feather-edged pattern for the spray, comprising a disc (insert) in the passageway between the valve port and the spray tip, a cylindrical projection on the face of said disc adjacent to the spray tip, the projection having a paint discharge orifice therein aligned with the opening in the spray tip. The spray tip is to have a cylindrical recess adjacent to the cylindrical insert disc, with the inner diameter of the recess corresponding to the outer diameter of the projection in order to maintain the pre-orifice in alignment with the spray tip opening. The pre-orifice and the spray tip opening are to be so spaced as to form a paint chamber within the recess around the discharge jet going from the pre-orifice to the opening in the spray tip.

Binks' first style pre-orifice inserts and first and second style electrostatic pre-orifice inserts fall clearly within the language of claim 3, except that the projection is intended to fit within a retainer ring behind the tungsten carbide spray tip in the defendant's nozzle. This is an immaterial change which does not affect the operation and results. Binks' first style pre-orifice inserts and first and second style electrostatic inserts embody every element recited in claim 3 or its equivalent, operating in the same way and producing the same results, and constitute infringement of claim 3.

Binks' second style pre-orifice inserts embody everything recited in claim 3,

except that the projection is confined within the thickness of the washer, and alignment is maintained by the outer circumference of the washer fitting within a recess in the nozzle assembly. Binks' expert witness testified that maintaining alignment in this manner from the outer circumference is the equivalent of the projection fitting within a recess in the spray tip. This change does not affect the operations and results. Binks' second style pre-orifice inserts embody every element recited in claim 3, or its equivalent, operating in the same way and producing the same results, and constitute infringement of claim 3.

*Claims 5 and 6*

Claims 5 and 6 of the patent in suit differ from claim 4 by reciting that the bore has an area no greater than about twice the area of the nozzle opening and an axial length greater than about twice its diameter. Each of Binks' pre-orifice inserts has a bore or passageway extending completely through the pre-orifice disc, which bore has an axial length greater than twice the diameter of the pre-orifice hole in the jewel. Binks' spray guns, when equipped with any of the different forms of Binks' pre-orifice inserts and with Binks' nozzles having spray openings related in area to the pre-orifice in the jewel in accordance with Binks' instructions to its customers, embody every element recited in claims 5 and 6, or its equivalent, operating in the same way and producing the same results, and constitute infringements of claims 5 and 6.

*Claims 1, 2, and 8*

Claims 1, 2, and 8 of the patent in suit differ from claims 5 and 6 by reciting that the pre-orifice is of *uniform* diameter through an axial length greater than about twice its diameter. It was agreed by witnesses for both parties that the submerged jet is formed at the entrance to the pre-orifice and the jet itself contracts in diameter until it reaches the vena contracta, the point of smallest diameter of the jet and, therefore, does not engage the side wall of the orifice in this region. Spee-Flo's enginer, Murdoch, had made tests with a wafer type pre-orifice disc and found that, when the wafer was made with a thickness less than twice the diameter of the orifice, the submerged jet spread sufficiently before reaching the nozzle opening so that the desired feather-edged spray pattern was not obtained. Although the orifice through the jewel in Binks' pre-orifice inserts is less than two diameters in axial length, the jet is surrounded by either cylindrical or conical walls of the brass cup extending downstream from the jewel itself. The witnesses for both parties agree that Binks' spray guns, when equipped with any of the different forms of Binks' pre-orifice inserts and with Binks' nozzles having spray openings related in area to the pre-orifices in accordance with Binks' instructions to its customers, do in fact produce a uniformly distributed spray pattern with feathered edges and free of pigtails. These spray guns therefore embody the full equivalent of the additional length of pre-orifice recited in claims 1, 2, and 8 so that the submerged jet is maintained to the spray nozzle to eliminate any vena contracta downstream from the spray nozzle, and embody every element of claims 1, 2, and 8, or its equivalent, operating in the same way and producing the same results, and constitute infringement of claims 1, 2, and 8.

The patent in suit disclosed as one of the preferred embodiments a pre-orifice having an axial length of about three times its diameter, but stated that it was only necessary that the orifice be sufficiently long to establish a submerged jet which persists as a jet until it reaches the nozzle opening. The patent pointed out that it is desirable to keep the length of the orifice as short as possible and stated that the invention was not limited to the preferred embodiments, but that rearrangements and modifications may be resorted to without departing from the scope of the invention.

The manufacture, sale, and use of spray guns equipped with any of Binks'

pre-orifice discs and a spray nozzle of a size related to the pre-orifice as described in this opinion constitute an infringement of each of claims 1 to 6 and 8 of patent No. 3,000,576.

The manufacture, use, and sale of any of Binks' pre-orifice inserts constitute an infringement of claim 3 of the patent in suit, and contributory infringement of, and inducement to infringe, each of claims 1, 2, 4, 5, 6, and 8 thereof.

*Binks' Defenses*

Binks' position has been that the patent, to be valid, must be limited to a pre-orifice with an axial length of at least two times its diameter, and that the accused devices do not have this dimension. To so limit the patent, Binks argues (1) the prior art shows that the area-matching principle had been anticipated and therefore the only novelty to the patent lies in its axial length requirement in the pre-orifice, and (2) the doctrine of file wrapper estoppel prevents Spee-Flo from claiming a pre-orifice with an axial length less than two times its diameter.

*Prior Art Evidence*

In this case, Binks introduced substantial and detailed information relating to a pre-patent device manufactured by Spray Engineering Company (Spraco). The President of Spraco, John S. Hartley, testified at length. His testimony concerning the "F," "FJ," and "FH" nozzles manufactured by Spraco was substantial and detailed. Mr. Hartley produced detailed drawings showing the sizes of all parts of the nozzles, gave detailed oral testimony as to all of the sizes, dimensions, and relationships embodied in the nozzles, produced evidence of and gave oral testimony relating to the relative areas of the pre-orifice and nozzle openings of the "F," "FJ," and "FH" nozzles. The Spraco nozzles were manufactured and sold many years before the filing date of the application of the patent in suit. These Spraco nozzles have a somewhat different nozzle opening or spray orifice from that shown in the patent in suit and conventionally used for airless spray painting. The

spray orifice is formed in a flat disc by means of a V-shaped slot in the front face of the disc, a "butterfly" cut in the rear face of the disc, and a round hole in the center of the disc at the intersection of the two slots. The result is an orifice which appears to be round but whose edge undulates up and down within the thickness of the disc so that the spray orifice is not a circle, but rather an odd-shaped non-circular orifice. As liquid approaches the rear face of this disc, the butterfly cuts throw the liquid toward the center and cause two streams of the liquid to impinge upon one another and to emerge from the orifice as a flat-fan atomized spray. All of these nozzles have pre-orifices. The Spraco nozzles are not normally used for airless spray painting.

Mr. Hartley testified on cross-examination, with respect to the detailed drawings from which the Spraco nozzles were manufactured, that in none of the drawings did the pre-orifice have an area less than twice the area of the spray orifice. In other words, none of the Spraco nozzles are designed nor manufactured to achieve a precise relationship between the area of the pre-orifice and the area of the spray orifice.

The Spraco devices, although approaching very near, were not such prior art as would anticipate the patent in this case. As stated by Mr. Justice Brown in the landmark patent case of Topliff v. Topliff, 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658 (1892):

" * * * Their device evidently approached very near the idea * * *; but this idea did not apparently dawn upon them, nor was there anything in their patent which would have suggested it to a mechanic of ordinary intelligence, unless he were examining it for that purpose. It is not sufficient to constitute an anticipation that the device relied upon might, by modification, be made to accomplish the functions performed by the patent in question, if it were not designed by its maker, nor adapted, nor ac-

tually used, for the performance of such functions."

Further, accidental results, not intended and not appreciated, do not constitute anticipation. Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 66, 43 S.Ct. 322, 67 L.Ed. 523 (1922).

Binks also relied upon patents and other devices introduced in the Gray Company case and upon other patents not before the Court in that case. These patents and other devices have been considered by the Court, but in this Court's opinion do not anticipate the claims in suit.

*File Wrapper Estoppel*

Binks also argues that Spee-Flo is not entitled to a liberal construction of the patent because of file wrapper estoppel.

Where an applicant, on the rejection of his application, inserts in consequence of that rejection limitations and restrictions into his specifications for the purpose of obtaining his patent, he cannot, after he has obtained it, claim that it shall be construed as it would have been if such limitations and restrictions were not contained in it. Deller's Walker on Patents (2nd ed. 1965), section 234.

Accepting a narrower claim when the Patent Office makes it a condition of the grant may result in estoppel. Cadillac Motor Corp. Co. et al. v. Austin, 225 F. 983, 992 (6th Cir., 1915). The applicant must accede to the demands of the Patent Office. If the patent as issued includes both broad and narrow claims, there has been no accession by the applicant and file wrapper estoppel does not apply. Hunt v. Armour & Co., 185 F.2d 722 (7th Cir., 1950). The Court is of the opinion that Binks cannot invoke the doctrine of file wrapper estoppel in this case.

During the prosecution of the application for the patent in suit, the patentees stressed in connection with some of their claims the uniform diameter through an axial length of more than two diameters, and filed an affidavit by Mr. Murdoch that his tests had shown some axial length was necessary and that in his wafer tests the new results disappeared when the length was less than two diameters. There were, however, at all times other claims present in the application which were not limited to any axial length. In the Patent Office action of July 5, 1961, the Patent Office allowed claims 25–27, 32, and 33, which became claims 1, 2, 3, 7, and 8 of the patent. Claim 27, patent claim 3, was not limited to any axial length of the orifice. At the same time, the Examiner rejected claim 29 which had no axial length limitation and claims 30 and 31 which were limited to an axial length greater than two diameters and these claims, after being amended to describe the transversely elongated sharp-edged spray nozzle, were allowed as claims 4, 5, and 6 of the patent. Spee-Flo at no time acceded to any demand of the Patent Office that the application be limited to a pre-orifice with an axial length of at least two times its diameter. File wrapper estoppel could possibly apply in this case as to the transversely elongated sharp-edged spray nozzle, but not to any length limitation or requirement of the pre-orifice. Therefore, Spee-Flo is not estopped from construing claims 1, 2, and 8 of the patent to cover Binks' spray guns having Binks' pre-orifice inserts in which the axial length through the jewel is less than two diameters and the jet is maintained by an equivalent means surrounding the jet until it reaches the spray nozzle opening.

The plaintiff, Spee-Flo Manufacturing Corporation, is entitled to an injunction against further infringement of, contributory infringement of, or inducement to infringe, Patent No. 3,000,576 by defendant Binks Manufacturing Company, and to an accounting and proper damages for patent infringement from Binks Manufacturing Company. The question of willful infringement is specifically reserved until the accounting period.

Counsel for Spee-Flo Manufacturing Corporation shall prepare and submit to the Court, after first affording counsel

for Binks Manufacturing Company the opportunity of inspection, an appropriate form of judgment to conform with this opinion.

The Clerk shall record these findings and conclusions and shall send a copy to each counsel named herein.