430 F.2d 74
 The SPEE-FLO MANUFACTURING CORPORATION, Plaintiff-Appellee-Cross Appellant,
v.
BRANIFF AIRWAYS, INCORPORATED and Southwest Air Equipment, Incorporated, Defendants-Appellants-Cross Appellees.
 No. 27718.
 United States Court of Appeals, Fifth Circuit.
 July 23, 1970.
 
 Howard E. Moore, W. B. West, III, Walter J. Jagmin, Clark, West, Keller, Sanders & Ginsberg, Dallas, Tex., for defendants-appellants cross-appellees.
 Harold F. McNenny, Cleveland, Ohio, Edward C. Hutcheson, Houston, Tex., Richard R. Lee, Jr., Dallas, Tex., McNenny, Farrington, Pearne & Gordon, Cleveland, Ohio, Ritchie, Ritchie & Crosland, Dallas, Tex., for plaintiff-appellee cross-appellant.
 Before WISDOM, AINSWORTH and CLARK, Circuit Judges.
 CLARK, Circuit Judge:
 
 
 1
 In this patent case we are confronted with the usual multiplicity of contentions by both sides which basically can be reduced to the loser's hope that if we review the evidence that was before the district court we will somehow come up with a different conclusion and defeat will change to victory. The hope is usually faint because of its basic fallacy that we retry cases. We do not — we only review them. And patent cases are no exception. Spee-Flo sued for infringement of two of its patents: No. 3,000,576 which patents an air-less spray paint gun, and No. 3,018,968 which covers a recirculating paint heater. The defendants defend on the bases of invalidity of Spee-Flo's patents for anticipation and obviousness, and non-infringement. The district court held both patents valid and infringed, however one of the paint guns which was charged to infringe No. 3,000,576 was held not to infringe. The defendants appeal in general, and Spee-Flo cross-appeals on the holding of non-infringement. Upon an examination of the record, we find the district court's findings to be supported by the evidence and its conclusions correct as a matter of law, consequently we affirm on both direct and cross-appeal.
 
 
 2
 The district judge made extensive — and hitherto unpublished — findings of fact and conclusions of law which we append to this opinion.
 
 I. PATENT NO. 3,000,576
 
 3
 As can readily be seen from the district court's findings and conclusions, this patent is no newcomer to this court. We have twice previously upheld its validity.[1] In order to prevail here, the defendants have the unenviable task of persuading us that they have discovered pertinent prior art not previously considered by the Patent Office, two district judges and two panels of this Court. Defendants have not discharged this heavy burden. The additional prior art advanced by defendants to prove anticipation or indicate obviousness did not convince the district judge. These findings of the content of the prior art and the advances over it wrought by the patented invention are questions of fact which the district judge is far better to determine than we. See Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); and such findings are clearly protected by the strictures of Rule 52(a), Fed.R.Civ.P.; see Metal Arts Co. v. Fuller Co., 389 F.2d 319 (5th Cir. 1968). We cannot say that the district judge was in error at all, let alone clearly erroneous, in these findings. We therefore affirm the conclusion that Patent No. 3,000,576 was valid and infringed.
 
 
 4
 The district judge did, however, find that the so-called LV nozzle used by defendants did not infringe Spee-Flo's patent. We have previously stated that "infringement exists only when the accused device and the teachings of the patent in suit are substantially identical in structure, mode of operation and results accomplished." Stewart-Warner Corp. v. Lone Star Gas Co., 195 F.2d 645 (5th Cir. 1952) at 648. The district judge found that the LV nozzle "differs in kind * * * in structure, function and mode of operation" from the patent in suit. It is evident from the very thorough findings and conclusions written by the district judge that she had an excellent grasp of the case at bar. Upon reviewing the record before us, we are again unable to say that she was clearly erroneous in holding the LV nozzle did not infringe Spee-Flo's patent, so we must also affirm her holding on this point which is raised here on cross-appeal.
 
 II. PATENT NO. 3,018,968
 
 5
 Although Patent 3,000,576 is making its third appearance in this court, Patent 3,018,968 — the other patent in suit — is a debutante. Patent 3,018,968 discloses claims for a system to heat and circulate and recirculate heated paint to a spray gun — whether the gun is operating or not. The system employs a single piston, double action pump instead of two pumps or a double piston pump — both of which had previously been used in such system. The principal difficulty solved by the single piston, double action pump was to prevent heated paint from mixing with unheated paint. The significance of the invention in suit and its method of operation are stated in the findings and conclusions of the district court.
 
 
 6
 Suffice it to say that based upon severely contradictory evidence, the district judge made the requisite findings of fact upon which it was proper to conclude that the '968 patent was both valid and infringed. We consequently affirm.
 
 
 7
 AFFIRMED on both direct and cross-appeals and REMANDED for an accounting.
 
 APPENDIX
 FINDINGS OF FACT
 
 8
 1. This is an action for infringement of U. S. Patent 3,000,576 for a "Spray Gun" and of U. S. Patent 3,018,968 for a "Closed System Recirculating Assembly". Both patents relate to applying finishing materials — paint, varnish, lacquer and the like — by spraying as distinguished from brushing. The complaint charges defendant, SOUTHWEST AIR EQUIPMENT, INCORPORATED with infringement by selling spray guns and equipment covered by the Letters Patent, and the defendant BRANIFF AIRWAYS, INCORPORATED by using spray guns covered by the Letters Patent and sold to it by SOUTHWEST AIR EQUIPMENT. Defendants deny the validity of the patents and infringement, and have filed counter claims, seeking a declaratory judgment that the patents are invalid and not infringed by defendants, alleging creation of a monopoly, estoppel from maintaining the action, and bad faith. Plaintiff and defendants both pray for injunctive relief and compensatory damages. Defendants in addition pray for punitive damages.
 
 
 9
 2. The jurisdiction of this Court is predicated upon the fact that this is an action arising under the Patent Laws of the United States.
 
 
 10
 3. The Plaintiff is a corporation organized under the laws of the State of Texas and has a place of business in Houston, Texas.
 
 
 11
 4. The Defendant, SOUTHWEST AIR EQUIPMENT, INC., is a corporation organized under the laws of the State of Texas and has a place of business in Fort Worth, Texas.
 
 
 12
 5. The Defendant, BRANIFF AIRWAYS, INC., is a corporation organized under the laws of Nevada and has a place of business in Dallas, Texas.
 
 
 13
 6. U. S. Patent 3,000,576 was issued on September 19, 1961 to Gustave S. Levey and Stanton F. Harvey, and is now owned by the Plaintiff.
 
 
 14
 7. Claims 1 to 6, inclusive, and 8 of said Letters Patent No. 3,000,576 have been held to be valid and infringed by the United States District Court for the Southern District of Texas in Spee-Flo Manufacturing Corporation v. Gray Company, Inc., 237 F.Supp. 616, affirmed by the United States Court of Appeals for the Fifth Circuit, 361 F.2d 489, and have been held valid and infringed by the United States District Court for the Southern District of Texas in Spee-Flo Manufacturing Corporation v. Binks Manufacturing Company, 264 F.Supp. 542, affirmed per curiam by the United States Court of Appeals for the Fifth Circuit, 392 F.2d 585.
 
 
 15
 8. The broad advance in the art achieved by the invention of Patent No. 3,000,576 was described by Judge Connally, 237 F.Supp. 616, beginning with the words "Spray painting has long been known —" on page 617 and ending with the sentence, "The disadvantages of the air spray system were eliminated." on page 618. The findings here referred to are adopted by this Court.
 
 
 16
 9. This Court likewise adopts the Findings of Judge Connally describing the invention, beginning on page 618 of his Opinion, with the words: "In all airless spray painting" and ending with the sentence "By reason of the fact that the reduction of pressure was accomplished at the site of the pre-orifice, etc." on page 619.
 
 
 17
 10. The findings on page 619 describing the Claims and beginning with the words, "Claims 1, 2 and 8 include the pre-orifice" etc. to the end of the paragraph are likewise adopted by this Court.
 
 
 18
 11. The Plaintiff's new H-gun embodying the pre-orifice met with immediate commercial success. There was testimony from customers that the results of spraying with the H-gun were very satisfactory, the disadvantages of the old airless guns were eliminated, and there was a 20% savings in materials.
 
 
 19
 12. As prior art anticipating Patent No. 3,000,576, Defendants relied on the following patents:
 
 U. S. patent to Bede No. 2,727,786
 U. S. patent to Nordson No. 2,936,959
 U. S. patent to Haftke No. 2,774,583
 U. S. patent to Foster No. 2,298,934
 U. S. patent to Munson No. 2,629,632
 British patent to Haftke No. 762,210
 German patent to Schlick No. 1,723,989
 French patent to Komet No. 862,841
 U. S. patent to Galloway No. 1,113,426
 U. S. patent to Michaels No. 2,794,683
 U. S. patent to Fischer No. 1,151,258
 U. S. patent to Carroll No. 2,500,528
 U. S. patent to Danielson No. 1,657,372
 U. S. patent to Wahlin No. 2,621,078
 U. S. patent to Graham No. 2,102,147
 U. S. patent to Gustafson No. 2,399,182
 
 20
 U. S. patent to Hughf No. 2,755,137.
 
 
 21
 13. Many of the orifice arrangements of the prior patents were made with respect to devices which were not for the use of liquid paint. There is no proof that, in any instance, there was an appreciation of the fact that there was an optimum proportion to be sought between the size of the pre-orifice and the size of the nozzle opening, as is claimed in the patent in suit. Prior patents do not anticipate a pre-orifice and nozzle opening of the same size in an airless paint spray gun.
 
 
 22
 14. In the prior efforts of Bede and Nordson the size of the aperture in the disc and in the nozzle were not correlated. The result was that the sale of airless spray guns was continued principally only for use with heated paint.
 
 
 23
 15. The invention of Patent No. 3,000,576 is a novel advance in the art of airless spray painting.
 
 
 24
 16. The structure cited in Claims 1 to 6 and 8 of Patent No. 3,000,576 would not have been obvious to one having ordinary skill in the art of airless spray painting at the time the invention was made.
 
 
 25
 17. Shortly after the Plaintiff's "H-Gun" embodying the patented invention was on the market, Nordson Corporation introduced pre-orifices (called restrictors) in its existing spray guns. These were announced in a "Sales Service Bulletin" dated November 9, 1960, and instructions were included for matching the restrictor size and the nozzle so that the areas would be substantially equal.
 
 
 26
 18. At about the same time Nordson advertised a new airless spray gun known as a "Versa-Gun" equipped with pre-orifices, with instructions for matching the size of the pre-orifice with the spray tip to be used. The "Nordson Newsletter" for November 1960 asserted that the new gun:
 
 
 27
 "HAS NO TENDENCY TO TAIL"
 
 
 28
 "provides atomization at lower pressure", and
 
 
 29
 "SPRAY PATTERN FEATHERS CORRECTLY to provide streak-free overlap on each pass."
 
 
 30
 19. Nordson has two forms of pre-orifices in its Versa-Gun. The first has a straight through cylindrical pre-orifice hole and the second one has a pre-orifice hole which is conical.
 
 
 31
 20. All of Claims 1 to 6, inclusive, and 8 read verbally on the first form; Claims 3, 4, 5 and 6 read verbally on the second form. Claims 1, 2 and 8 do not read literally on the second form of "Versa-Gun" because each of these claims defines the orifice as having a uniform diameter through an axial length not less than two diameters, whereas in the accused device the minimum diameter portion of the pre-orifice has an axial length less than two diameters, and the remainder of the passage through the pre-orifice disc is of larger diameter. The function, however, of the axial length of the pre-orifice is to guide and confine the submerged jet into a compact jet moving through the chamber into the spray nozzle without spreading out and losing its velocity. Infringement of Claims 1, 2 and 8 as to the second form of "Versa-Gun" is established under the doctrine of equivalence.
 
 
 32
 21. These two forms of the Nordson "Versa-Gun" do the same work in substantially the same manner and accomplish substantially the same result as Patent No. 3,000,576.
 
 
 33
 22. These two forms produce a submerged jet moving into the spray opening. Without the matching pre-orifice, the same guns produce pigtails at the edge of the swath and flooding in the center. With the matching pre-orifice the gun achieves uniform atomization and distribution forming a swath with feathered edges identical with the patented gun.
 
 
 34
 23. These two forms of the Nordson "Versa-Gun" infringe the Patent No. 3,000,576.
 
 
 35
 24. The LV nozzle manufactured by Nordson is charged to infringe Claims 3 and 4 of the Patent No. 3,000,576. The LV nozzle can be used on any type of gun. The paint flows from the back of the gun, passes through two off center holes and the cone into a pocket which surrounds the turbulence plate and the rear section of the spray nozzle. The turbulence plate is in tight metal-to-metal contact with the rear of the spray nozzle tip and therefore the fluid is forced to go into the transverse groove of the turbulence plate. The groove runs all the way across the turbulence plate so there are two streams entering into the approach passage, the central passage of the rear part of the spray tip. These two streams are of equal cross-section and impinge inside the approach passage of the spray nozzle. The two streams on impingement cause a high degree of turbulence at that point. The stream moves down and out the spray orifice in a highly turbulent fashion.
 
 
 36
 25. In the patent file history it was emphasized that the "compact submerged jet" in the chamber between the pre-orifice and the tip orifice was a critical element necessary to the functioning of the invention and the novel result obtained thereby. In Judge Connally's opinion emphasis was placed on the movement of the paint through the pre-orifice and into a small chamber in the form of a submerged jet and traveling through the chamber as a submerged jet until reaching the spray orifice. The LV nozzle does not contain (a) any such chamber through which the paint passes.
 
 
 37
 26. Another critical feature of the Patent No. 3,000,576 is that the pre-orifice passage must be in axial alignment with the spray orifice so as to create a submerged jet. The LV turbulence plate does not have a pre-orifice which is in axial alignment with the tip orifice and a submerged jet is not created.
 
 
 38
 27. Claim 3 requires "a cylindrical projection * * * having a paint discharge orifice therein aligned with the said opening in the spray tip." Claim 4 requires "an axially extending circular bore * * * connecting said valve part with said chamber", to create "a compact submerged jet of liquid paint moving axially through said chamber and into said nozzle opening." These requirements are not found in the LV nozzle.
 
 
 39
 28. The LV nozzle differs in kind from the '576 patent in suit in structure, function and mode of operation. It employs a principle not disclosed nor suggested in the '576 patent in suit. All fluid entering the approach to the nozzle orifice enters at substantially right angles to the axis of the nozzle as taught in the Fischer Patent No. 1,151,258, the Carroll Patent No. 2,522,928 and the Wahlin Patent No. 2,621,078. All the fluid passing through the nozzle orifice has come to proximity therewith in a plurality of opposed streams at the entrance of the approach passage of the spray nozzle more akin to the teachings of the above mentioned prior patents and the Merrell Patent No. 1,183,393, Graham, No. 2,102,147 and/or Danielson No. 1,657,372 than to any teaching of the '576 patent in suit. Claims 3 and 4 cannot be read on the LV nozzle and the LV nozzle does not infringe Patent No. 3,000,576.
 
 
 40
 29. U. S. Patent No. 3,018,968 was issued on January 30, 1962 to Gustave S. Levey and is now owned by plaintiff.
 
 
 41
 30. This invention relates to a closed circuit spray painting system including a piston pump and a paint heater.
 
 
 42
 31. The patent discloses a closed recirculating assembly for pumping paint through a heater to a spray gun and recirculating the paint past the spray gun and back through the pump when the spray gun is closed, so as to maintain hot paint at the gun ready to be sprayed when the gun is again triggered.
 
 
 43
 32. In some of the prior hot spraying systems two pumps were used, one to deliver the paint under pressure to the spray gun and the other to recirculate it through the heater without permitting any of the heated paint to return to the pressure pump or the main paint supply, when the gun was closed. Others used a two-piston pump in which one piston was intended to be delivering paint, while the other was intaking. A single piston, double acting pump such as had been used for cold paint and non-recirculating systems had also been tried.
 
 
 44
 33. The principal objection to the two-pump system was the added expense of purchasing and maintaining two pumps. The double piston pumps were not satisfactory because the intake stroke of each piston was uncontrolled and not timed to match the delivery stroke so that there was a jerking and surging of the liquid in the intake pipe leading to the main paint supply, resulting in mixing the hot and cold paint in the intake pipe and back into the paint supply. In addition the double cylinder pump was much more costly to purchase and maintain than a single piston double acting pump.
 
 
 45
 34. The single piston pump in Patent No. 3,018,968 operates in a cylinder in which the piston moves up and down on the lower end of a piston rod. While paint is taken into the cylinder only on the upstroke of the pump, it flows through a check-valve in the piston on the downstroke, so that at all times the cylinder is full of paint except for that portion occupied by the piston and the piston rod. On the upstroke the entire cylinder is filled with paint. On the downstroke, however, the cylinder contains only as much paint as can be accommodated along with the piston rod. The piston rod occupies approximately one-half of the cross-sectional area within the cylinder and thus on completion of the downstroke only one-half as much paint can be accommodated in the cylinder as on the completion of the upstroke. When the gun is closed and not spraying, there is a one-half cylinder of paint that must, on each downstroke, back up on the intake side of the pump, or into the paint reservoir. In order to prevent mixing the heated paint with the cold paint and at the same time provide an expansible chamber to receive and accommodate the one-half cylinder full of paint returned to the intake side of the pump on the downstroke of the piston, an intake pipe was provided which connected to the intake side of the pump and to the return recirculating line and had a volume between the connection to the return line and the point where it opens into the main paint supply greater than the volume of paint which is returned and forced back up during each downstroke of the piston. The hot and cold paint in the intake pipe do not mix because of the smooth controlled flow of the paint in both directions produced by the single piston double acting pump, as distinguished from the jerky and uncontrolled flow produced by the double piston pumps in which this intake stroke was uncontrolled and much faster than the delivery stroke.
 
 
 46
 35. Two forms of this invention have been manufactured by plaintiff. The first form is illustrated in Figures 1 to 6, inclusive, of the patent. The pump is immersed in the paint in a barrel. The intake opening at the lower end of the pump is connected through a block to the open end of a circular intake pipe. The return line from the gun is also connected to the open end of the pipe. The opposite end of the pipe is closed but an opening through the side of the pipe connects with the interior of the paint supply barrel. The circular intake pipe has a volume sufficient to receive the half cylinder of paint returned on the downstroke of the pump. The boundary between the hot and cold paint moves smoothly around the ring as the excess paint is returned and then moves at the same rate in the opposite direction as the pump intakes on the upstroke. The second form is illustrated in Figure 10 of the patent in which the pump is outside the paint barrel. In this form the secondary reservoir connected to the bottom of the pump, instead of being a ring, is a hose and tube leading from the pump into the paint barrel. This intake pipe is made of sufficient length to accommodate the returned paint, and the hot returned paint forms an interface with the cold paint sucking out of the barrel by the pump. The interface moves back and forth in the intake pipe when the pump is recirculating with the spray gun closed in the same way that it moves around the circular tube or intake pipe in the first form.
 
 
 47
 36. Plaintiff has sold an increasing number of the single piston pumps and has replaced sales of other pumps by plaintiff.
 
 
 48
 37. Defendants contend that the two-piston pump manufactured by Nordson and one of Plaintiff's prior efforts in developing a single piston pump anticipated Patent No. 3,018,968.
 
 
 49
 38. The two cylinder pump of Nordson did not achieve the results of the Patent No. 3,018,968 because the intake stroke was not controlled, with the result that heated liquid backed up through the pipe into the main supply container. In addition it was much more expensive and complicated. The two-cylinder Nordson pump does not anticipate the single piston pump of the patent.
 
 
 50
 39. The Plaintiff's prior effort to construct a heated circulating system with a single piston pump was not successful and never placed on the market. In addition Plaintiff's invention is a closed system, whereas, in Plaintiff's prior effort, the heated paint was returned to an open container.
 
 
 51
 40. Plaintiff's "shroud" device (Defendants' Exhibit 312) was likewise unsuccessful and was shown by undisputed testimony to mix the hot returned paint with the cold paint supply in the open paint barrel.
 
 
 52
 41. The invention claimed in this patent is simple, but it had never been discovered, despite the need of the industry. The history of the art shows that the invention was not obvious.
 
 
 53
 42. Southwest Air Equipment has sold heated recirculating assemblies made by Nordson Corporation and others made by Gray Company, all of which are substantially identical with the form of the invention illustrated in Figure 10 of Patent No. 3,018,968. They include single piston, double acting pumps and intake pipes serving as secondary reservoirs to maintain the heated returned paint enclosed from the atmosphere and separated from the cold paint in the supply. They infringe Claims 3, 5, 6 and 7 of the patent in suit.
 
 
 54
 43. There is no evidence that Plaintiff was required by the Patent Office to give up certain subject matter to obtain either of the two patents in suit and thereafter attempted to construe the allowed claims to recapture anything he had surrendered.
 
 
 55
 44. There is no evidence that Plaintiff maliciously and wrongfully brought this complaint with regard to either of the patents in suit.
 
 CONCLUSIONS OF LAW
 
 56
 1. This Court has jurisdiction of the subject matter in suit and over the parties.
 
 
 57
 2. The Plaintiff, THE SPEE-FLO MANUFACTURING CORPORATION, is the owner of the entire right, title and interest in and to the patents in suit and has the right to maintain suits for infringement of such patents.
 
 
 58
 3. Under Title 35, U.S.C.A., Section 282, the patents in suit are presumed to be valid. In the absence of clear and convincing evidence to the contrary, the law presumes that the Patent Office correctly issued the patents.
 
 
 59
 4. Unless the subject matter of a patent involves both novelty and invention, the patent is invalid, for mere novelty without invention is insufficient. The question of invention involves the whole of the prior art and the patentee is charged with knowledge of all the prior art extant at the time of his alleged invention whether actually known to him or not. The mere exercise of the calling does not amount to invention.
 
 
 60
 5. The prior art offered by defendants with respect to Patent No. 3,000,576 does not anticipate any of the claims of said patent. The utilization of a pre-orifice and nozzle opening of the same size is the new element which distinguishes it from prior art.
 
 
 61
 6. The prior art offered by Defendants with respect to Patent No. 3,018,968 does not anticipate any of the claims of said patent. Nothing in the prior art embodies the same combination operating in the same way and achieving the same results.
 
 
 62
 7. The inoperable single piston pump systems of Plaintiff which failed to achieve the intended result do not anticipate Patent No. 3,018,968.
 
 
 63
 8. When there had been a long standing need for a solution to overcome defects in the prior art, the solution to the problems as solved by the patentee of the patents in suit was not obvious to those skilled in the art.
 
 
 64
 9. The commercial success of Plaintiff's two inventions described in the patents in suit is a circumstance, when combined with another circumstance, which indicates invention.
 
 
 65
 10. The inventions of both patents in suit are a novel advance in spray painting and would not have been obvious to one having ordinary skill in the art at the time the inventions of such patents were made.
 
 
 66
 11. Since all of Claims 1 to 6, inclusive, and 8 read verbally on the first form of the Versa-Gun, such claims are infringed by said form.
 
 
 67
 12. Claims 3, 4, 5 and 6 read verbally on the second form. While Claims 1, 2 and 8 do not read literally on the second form, the doctrine of equivalence being established, all of said claims are infringed by the second form of the Versa-Gun.
 
 
 68
 13. Defendant SOUTHWEST AIR EQUIPMENT, INC. by its sale of spray guns of the first and second form of the Versa spray gun has infringed Claims 1 to 6, inclusive, and 8 of Patent No. 3,000,576.
 
 
 69
 14. Defendant, SOUTHWEST AIR EQUIPMENT, INC., by its sale of the Nordson and Grayco pump having a syphon hose used in a hot paint circulating pump, has infringed Claims 3, 5, 6 and 7 of Patent No. 3,018,968.
 
 
 70
 15. Defendant, BRANIFF, INC., by its use of the Versa spray gun purchased from SOUTHWEST AIR EQUIPMENT, INC. and made by Nordson Corporation, has infringed Claims 1 to 6, inclusive, and Claim 8 of Patent No. 3,000,576.
 
 
 71
 16. The LV nozzle, manufactured by Nordson and sold by SOUTHWEST AIR EQUIPMENT COMPANY, since it does not contain the essential elements nor does it work in the same manner as the spray gun, described in Patent No. 3,000,576, does not infringe the spray gun patent in suit.
 
 
 72
 17. File wrapper estoppel does not apply in connection with either of the patents in suit.
 
 
 73
 18. Plaintiff is not estopped under the doctrine of unclean hands from enforcing the patents in suit.
 
 
 74
 19. Plaintiff is entitled to an injunction against further infringement of the patents in suit, to an accounting of its damages sustained by reason of such infringement, such damages to be not less than a reasonable royalty to a judgment on the damages so determined, and execution on such judgment. The Defendants are entitled to a judgment holding there has been no infringement by the sale and use of the Nordson LV nozzle.
 
 
 75
 Attorneys' fees and costs are hereby specifically reserved until the accounting period.
 
 
 76
 Sarah T. Hughes
 UNITED STATES
 DISTRICT JUDGE
 
 
 
 Notes:
 
 
 [1]
 Gray Co., Inc. v. Spee-Flo Mfg. Corp., 361 F.2d 489 (5th Cir. 1966), aff'g 237 F. Supp. 616 (S.D.Tex.1964), Supplemental memorandum 255 F.Supp. 618 (S.D.Tex. 1964); and Binks Mfg. Co. v. Spee-Flo Mfg. Corp., 392 F.2d 585 (5th Cir. 1968) aff'g 264 F.Supp. 542 (S.D.Tex.1967)