COLGATE PALMOLIVE COMPANY,
Plaintiff,

v.

W.L. GORE & ASSOCIATES,
INC., Defendant.

Civil Action No. 95–2101(JCL).

United States District Court,
D. New Jersey.

March 27, 1996.

Joseph J. De Palma, Goldstein, Till & Lite, Newark, NJ, for Plaintiff.

Richard D. Catenacci, Connell, Foley & Geiser, Roseland, NJ, David H. Pfeffer, Stephen R. Smith, Morgan & Finnegan, New York City, for Defendant.

## OPINION

LIFLAND, District Judge.

W.L. Gore & Associates, Inc. ("Gore") moves for partial summary judgment of non-infringement of Colgate Palmolive Company's ("Colgate's") '488 patent, contending that its beeswax-coated Glide dental floss does not literally infringe the '488 patent and invoking the doctrine of prosecution history estoppel (also known as "file wrapper estoppel") to parry Colgate's assertion of infringement by the doctrine of equivalents. Colgate counters that it surrendered no claim coverage during the prosecution history, or at a minimum, fact questions abound on this question, thereby precluding summary judgment. For the reasons set forth below, the Court holds that Gore has not infringed Colgate's '488 patent.

### Background

This is a patent infringement suit brought by Colgate against Gore, both manufacturers of dental floss. Colgate is the owner of United States Patent No. 5,033,488 ("the '488 patent"), which Gore is alleged to have infringed by making, selling, and using wax-coated polytetrafluoroethylene ("PTFE") dental floss.[1]

Colgate's '488 patent discloses a PTFE dental floss coated with microcrystalline wax ("MCW"). PTFE is a teflon[2] material that is stronger and has a lower coefficient of friction than linen, cotton, or other floss fibers currently on the market, enabling it to slide more easily in the contact points between teeth. However, the low coefficient of friction renders it difficult to grasp uncoated PTFE floss. Colgate discovered during research that "MCW, surprisingly, adheres to the porous, high strength PTFE," see '488 Patent, col. 2, lines 8–9, increasing the coefficient of friction and making it easier to handle. The patent therefore discloses a floss that uses a wax coating to *increase* the coefficient of friction, whereas the prior art taught that wax could *decrease* the floss' coefficient of friction.

Claim 1 of the '488 patent, the only independent claim, describes:

1. A dental cleaning floss wherein said floss is comprised of expanded polytetrafluoroethylene having a tensile strength of at least 68,950 kPa, or polymeric matrix strength of at least 689,000 kPa and a coefficient of friction of at least about 0.08, said coefficient of friction having been increased from untreated polytetrafluoroethylene by having adhered to the surface of said polytetrafluoroethylene a microcrystalline wax having a molecular weight of about 580 to 800.

References to MCW permeate the patent, not only in the claims but also in the background and detailed description sections. The word "beeswax" is nowhere mentioned in the patent.

### Prosecution History

The '488 patent resulted from Patent Application Serial No. 282,962 ("the '962 application"), itself a continuation in part of application number 174,757.[3] Claim 1 of the application described: "A dental cleaning floss comprising a multiplicity of filaments of Expanded PTFE, having a tensile strength of at least 68,950 kPa and a polymeric matrix strength of at least 689,600 kPa and a coating adhering thereon of mi-

---

1. Colgate also alleges that Gore has infringed United States Patent No. 5,209,251 ("the '251 patent"). The '251 patent infringement proceedings have been stayed pending reexamination and reissue proceedings before the United States Patent and Trademark Office ("PTO"). *See* this Court's November 28, 1995 Memorandum and Order.

2. Gore owns the patent for expanded PTFE floss. *See* U.S. Patent No. 3,953,566.

3. The '757 application was rejected as anticipated by the prior art and abandoned on March 29, 1988.

crocrystalline wax, said floss having a coefficient of friction of from about 0.08 to about 0.25." *See* Pfeffer Decl., Ex. 2 at 28. The patent examiner initially rejected all the claims as obvious in light of the Lorch (U.S. Patent No. 4,776,358) and Guyton (U.S. Patent No. 4,029,113) patents. *See id.* at 37. *See also* 35 U.S.C. § 103.[4] As the Examiner explained in an Action filed February 28, 1990: "Lorch shows PTFE floss, however, does not show a microcrystalline wax coating. Guyton shows a floss coated with microcrystalline wax (column 4, lines 15–20). It would be obvious to one of ordinary skill in the art to modify Lorch to include a wax coating as shown by Guyton because wax coated floss is well known in the dental floss art. The range of coefficient of friction of the floss is held to be an obvious matter of choice in the range of known parameters because *the reason wax is used with dental floss is to decrease the friction when in use.*" *See* Fier Decl., Ex. B at 2–3. (emphasis added). Thus, the examiner seems to have construed the wax coating as being used for its traditional purpose, essentially to reduce the coefficient of friction.[5]

Colgate responded with an amendment filed on May 7, 1990, cancelling original claim 1 and substituting claim 10, which became claim 1 of the '488 patent. The only added limitation between the prior and amended version was the 580–800 parameter placed on the molecular weight of the microcrystalline wax. The other change, which did not limit the claim's scope, was the explicit statement that MCW is utilized to increase the coefficient of friction: "said coefficient of friction having been increased from untreated polytetrafluoroethylene by having adhered to the surface ... a microcrystalline wax...." '488 Patent, Claim 1. Accompanying the amendment was argument that explained why the prior art Lorch and Guyton patents did not anticipate Colgate's claims.

**Discussion**

Summary judgment is not a disfavored procedural shortcut, but rather an essential thread in the fabric of the Federal Rules that eliminates unfounded claims without recourse to a costly and lengthy trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P.* 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *See Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). "This burden ... may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. at 325, 106 S.Ct. at 2554. All evidence submitted must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Once a properly supported motion for summary judgment has been made, the burden

4. 35 U.S.C. § 103 prescribes that: "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made. Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person."

5. This interpretation conflicts with the language of the detailed description included in the '962 application: "The present inventors discovered that, to their surprise, from amongst different waxes, microcrystalline wax (MCW) in particular adheres to Expanded PTFE and unexpectedly, results in ... important benefits: First, the MCW provides a COF sufficiently high to permit the user to securely grasp the floss or tapes; but generally not so high as that of the prior art." Pfeffer Decl., Ex. 2 at 47.

shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring the nonmoving party such that a reasonable jury could return a verdict in that party's favor. *See id.* at 249, 106 S.Ct. at 2510.

**Literal Infringement**

■ It is well-settled that literal infringement involves a two-tiered analysis. First, a court interprets the patent claims to define their meaning and scope. Interpretation is a question of law and a court's Rosetta Stones for deciphering claim language are the claims, the specification, and the prosecution history. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.) (en banc) ("We therefore settle inconsistencies in our precedent and hold that in a case tried to a jury, the court has the power and obligation to construe as a matter of law the meaning of language used in the patent claim."), *cert. granted,* —— U.S. ——, 116 S.Ct. 40, 132 L.Ed.2d 921 (1995); *Southwall Technologies Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1575 (Fed.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995). Second, the trier of fact compares the properly construed claim to the infringing product to ascertain if the patented claims "read on the accused product." *Id.* "To establish literal infringement, every limitation set forth in a claim must be found in an accused product *exactly." Id.* (emphasis added). *See also Unique Concepts, Inc. v. Brown,* 939 F.2d 1558, 1562 (Fed.Cir.1991).

■ Gore argues, and Colgate conceded at oral argument, *see* Tr. at 5, that Gore's beeswax-coated floss does not literally infringe the '488 patent since the patent and prosecution history demonstrate that MCW is a limitation in the patent. Independent Claim 1 teaches that the PTFE is coated with "a microcrystalline wax having a molecular weight of about 580 to 800." Moreover, numerous references to MCW appear in the detailed description and describe the surprising properties of MCW, *see* col. 4, lines 12–14; col. 7, lines 14–16, buttressing the argument that the claim requires a MCW coating.[6]

The prosecution history also supports the conclusion that MCW is a limitation in claim 1. Colgate distinguished MCW from the waxes discussed in the prior art Guyton patent,[7] disclaiming them for purposes of the literal scope of the patent. Since Gore's Glide products are coated with beeswax, *see* Spencer Decl. at ¶ 2,[8] a chemically distinct product from MCW,[9] every limitation in the '488 patent cannot be found in the allegedly infringing product. *See Unique Concepts,* 939 F.2d at 1562. Accordingly, Gore's Glide products do not literally infringe Colgate's '488 patent.

**Prosecution History Estoppel**

■ Even if Gore's dental floss products do not literally infringe the '488 patent, Col-

---

6. The description also names eleven commercial grades of MCW, *see* col. 4, lines 36–53, and describes the melting point and molecular weight of the MCW that provides optimum adherence to PTFE. *See* col. 5, lines 10–12.

7. Colgate argued that "[t]he fact that a microcrystalline wax having a molecular weight of 580 *to 800 is effective (at adhering to PTFE) is not* obtainable from the prior art. It is now known only after the applicant's research. Out of all of the waxes disclosed by Guyton only *one* wax at a particular molecular weight range is known to be effective to adhere to and to coat PTFE. This is not obvious from Guyton." Fier Decl., Ex. A at 3 (emphasis in original).

8. According to John Spencer, a Gore employee with overall supervisory responsibility for Gore's dental floss products, the defendant "has never

made, used or sold a dental floss product that is coated with microcrystalline wax or with any composition containing microcrystalline wax.... [A]ll coated dental floss products that Gore has made, used or sold (during the relevant period) have contained a coating of beeswax, not microcrystalline wax." Spencer Decl. at ¶ 2. Colgate suggests that Gore's beeswax may contain Carnauba wax adulterants, but this contention has no bearing on the literal infringement analysis set forth above.

9. Beeswax is an animal wax while MCW is a type of mineral wax. *See* Grant & Hackh's *Chemical Dictionary* at 628 (5th ed. 1987), annexed as Ex. 5 to the Pfeffer Decl.

gate contends that beeswax-coated PTFE dental floss infringes the patent under the doctrine of equivalents. Infringement under this doctrine, a question of fact, exists if a device " 'performs substantially the same function in substantially the same way to obtain the same result.' " *Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950) (quoting *Sanitary Refrigerator Co. v. Winters,* 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147 (1929)). *See also Hilton Davis Chemical Co. v. Warner–Jenkinson Co., Inc.,* 62 F.3d 1512, 1517 (Fed.Cir.1995) (en banc), *cert. granted,* — U.S. —, 116 S.Ct. 1014, 134 L.Ed.2d 96 (February 26, 1996). The doctrine ensures that patent pirates cannot immunize themselves from infringement liability by undertaking minor, insubstantial alterations solely to remove a product from the literal scope of a patent's claims. *See Graver Tank,* 339 U.S. at 607, 70 S.Ct. at 856 ("One who seeks to pirate an invention, like one who seeks to pirate a copyrighted book or play, may be expected to introduce minor variations to conceal and shelter the piracy.").

■ But "[t]he doctrine of equivalents cannot be used to erase 'meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.' " *Conopco, Inc. v. May Department Stores Company,* 46 F.3d 1556, 1562 (Fed.Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1724, 131 L.Ed.2d 582 (1995) (quoting *Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 935 (Fed.Cir.1987) (en banc), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988)). Prosecution history estoppel therefore limits application of the doctrine of equivalents by preventing recapture of coverage surrendered during prosecution in order to obtain allowance of the claims. *See Mark I Marketing*

*Corp. v. Donnelley & Sons Co.,* 66 F.3d 285, 291 (Fed.Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 917, 133 L.Ed.2d 847 (1996); *Pall Corporation v. Micron Separations, Inc.,* 66 F.3d 1211 (Fed.Cir.1995); *Zenith Lab, Inc. v. Bristol–Myers Squibb Co.,* 19 F.3d 1418, 1424 (Fed.Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 500, 130 L.Ed.2d 409 (1994). The application of prosecution history estoppel is a question of law, *see Mark I,* 66 F.3d at 289, 291; *Hoganas AB v. Dresser Industries, Inc.,* 9 F.3d 948, 952 (Fed.Cir. 1993), and an estoppel can arise from amendment, argument, or cancellation of a claim. *See Haynes International, Inc. v. Jessop Steel Companies,* 8 F.3d 1573, 1579 (Fed.Cir. 1993) ("[A]n estoppel can be created even when the claim, which is the basis for the assertion of infringement under the doctrine of equivalents, was not amended during prosecution.").

■ A court will estop a patentee from recapturing coverage relinquished during prosecution if the history would convince the mythical reasonable competitor that the patent owner had surrendered the allegedly offending construction. *See Mark I,* 66 F.3d at 291; *Hoganas,* 9 F.3d at 952; *Haynes,* 8 F.3d at 1578; *Zenith,* 19 F.3d at 1424.[10] However, the Federal Circuit has held that one cannot reasonably conclude that the patentee disclaimed coverage and triggered an estoppel based merely on the fact that the patent applicant amended his claim during prosecution. As explained in *Hughes Aircraft Co v. United States,* 717 F.2d 1351, 1363 (Fed.Cir.1983):

Amendment of claims is a common practice in prosecution of patent applications. No reason or warrant exists for limiting application of the doctrine of equivalents to those comparatively few claims allowed exactly as originally filed and never amend-

10. Colgate argues that, at a minimum, the prosecution history contains disputed issues of fact since "Gore's position raises questions of the intent and meaning of the argument made by Colgate in the amendment" and argument. Br. in Op. at 20. Colgate relies principally on *Hormone Research Foundation v. Genentech, Inc.,* 904 F.2d 1558, 1567 (Fed.Cir.1990), *cert. dismissed,* 499 U.S. 955, 111 S.Ct. 1434, 113 L.Ed.2d 485 (1991), which held that "the scope

of estoppel can depend on factual questions regarding the prosecution history, which may be disputed and preclude a disposition of the issue on summary judgment." *Id.* at 1564. However, *Hormone Research* is distinguishable because the arguments made before the patent examiner in that case were sufficiently ambiguous to permit multiple interpretations. Here, as will be discussed, no ambiguity obscures the meaning of the argument before the patent examiner.

ed. Amendments may be of different types and may serve different functions. Depending on the nature and purpose of an amendment, it may have a limiting effect within a spectrum ranging from great to small to zero. The effect may or may not be fatal to application of a range of equivalents broad enough to encompass a particular accused product. It is not fatal to application of the doctrine itself.

*See also Pall Corporation*, 66 F.3d at 1219; *Bayer Aktiengesellschaft v. Duphar Int'l Research B.V.*, 738 F.2d 1237, 1243 (Fed.Cir. 1984) ("[A] close examination must be made as to, not only what was surrendered, but also the reason for such a surrender.").

■ If an estoppel is to derive from argument made during examination, the courts have generally required that the facts permit the inference that the examiner relied upon the argument in allowing the claim. *See Zenith*, 19 F.3d at 1425 n. 8 ("A showing that the conduct in question played a material role in the issuance of the patent usually suffices."). Nevertheless, in *Texas Instruments v. United States Intern. Trade Com'n*, 988 F.2d 1165 (Fed.Cir.1993), the Federal Circuit held that "[u]nmistakable assertions made by the applicant to the Patent and Trademark Office (PTO) in support of patentability, *whether or not required to secure allowance of the claim*, also may operate to preclude the patentee from asserting equivalency between a limitation of the claim and a substituted structure or process step." *Texas Instruments*, 988 F.2d at 1174 (emphasis added). *See also Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.*, 73 F.3d 1573, 1582 (Fed.Cir.1996) (nearly identical language used). Thus, if argument unequivocally describes a technique, device or configuration as ineffective, a court undertakes the reliance inquiry not from the perspective of the patent examiner but rather from that of a reasonable competitor in the market. An estoppel will arise if a reasonable competitor would rely on the representations tendered during patent prosecution. *See Texas Instruments*, 988 F.2d at 1174–75.

*Colgate's Abandonment of Non–MCW–Coated Dental Floss*

■ Review of the argument Colgate advanced before the patent examiner reveals that the patentee unambiguously abandoned non-microcrystalline wax because such wax, Colgate erroneously thought, would not bind to teflon floss. After the examiner rejected Colgate's patent as obvious in light of the prior art, Colgate amended its application to make clear that MCW was used differently than in the prior art. Claim One of the amended application now read: "said coefficient of friction having been increased from untreated polytetrafluoroethylene by having adhered to the surface of said polytetrafluoroethylene a microcrystalline wax having a molecular weight of about 580 to 800." As indicated in the claim, Colgate used MCW to increase the dental floss' coefficient of friction, whereas the reference cited by the examiner, the Guyton patent, taught nothing about using wax to increase the coefficient of friction. Wax traditionally had been used with non-PTFE dental floss "to *decrease* the COF and to *increase* lubricity." Fier Decl., Ex. A at 2 (emphasis in original).

In remarks accompanying the amendment, Colgate underscored the importance of MCW.

1) Due to the very low COF of the PTFE floss surface it is very difficult to have materials bind to PTFE. The only wax that will effectively bind to PTFE is microcrystalline wax. Further, this should have a molecular weight of about 580 to 800. This is in contrast to conventional flosses where a variety of synthetic and naturally occurring waxes can be used. Fier Decl., Ex. A at 2.

2) Out of all of the waxes disclosed by Guyton only *one* wax at a particular molecular weight range is known to be effective to adhere to and to coat PTFE. This is not obvious from Guyton. *Id* at 3 (emphasis in original).

3) It is well established that all limitations of a claim must be considered in determining the claimed subject matter. It is error to ignore specific limitations that distinguish over a reference.... The particular material (PTFE) and the particular microcrystalline wax cannot be ignored. *Id.* at 4.

As these passages demonstrate, Colgate asserted without qualification that its trial and

error research revealed that only MCW of a particular molecular weight would adhere to PTFE. *See id.* at 3.

Colgate contends that laboratory analysis of the commercial beeswax Gore utilizes reveals that the wax is neither the same beeswax disclosed in the prior art nor is it used in the same amount as taught by the prior art. *See* Deft.'s Letter–Brief at 2. The wax Gore uses, while it may conform to the 1995 United States Pharmacopeia criteria, Colgate argues, does not meet all criteria for the wax published in the 1975 Pharmacopeia, and is used in smaller amounts than the 19 to 25 percent by weight of the floss referred to by implication in Guyton.[11] Even if true, these revelations do not narrow the scope of the estoppel created by Colgate's argument before the patent examiner. Colgate's patent solicitor argued that of the "essentially limitless" waxes that could coat the floss of Guyton, *see* Fier Decl., Ex. A at 3, research revealed that only MCW of a specific molecular weight would adhere to PTFE floss. This representation would imply to a reasonable competitor that varying amounts of all other waxes had been tested and had not been effective.[12]

It is immaterial that subsequent events proved this contention false. Also legally irrelevant is whether Colgate's scientists neglected to test beeswax or employed a deficient methodology. What is legally significant is that Colgate represented by negative implication that all other non-microcrystalline waxes, including beeswax, would not bind to PTFE.[13] A reasonable competitor such as Gore is entitled to rely on this prosecution history, notwithstanding that the file wrapper does not indicate whether the examiner himself relied on these statements. *See Texas Instruments,* 988 F.2d at 1174–75.

*Texas Instruments* is squarely on point. That case involved the alleged infringement of a patented process by which a semiconductor is encapsulated in plastic without harming the semiconductor or the attached electrical wiring. During prosecution of the patent, the inventors emphasized "opposite-side gating" because "same-side gating" did not work and was known in the art. None of the prior art references suggested "opposite-side gating." The Court therefore held:

> By expressly stating that claim 12 was patentable because of the opposite-side gating limitation, particularly in light of their previous admission that same-side gating was known in the art, the inventors unmistakably excluded the same-side gating as an equivalent. Having represented that same-side gating does not work, and having distinguished cited prior art as not teaching the functional opposite-side gated process, TI cannot foreclose reliance upon its unambiguous surrender of subject matter." 988 F.2d at 1174–75.

*Cf. also Standard Oil Company v. American Cyanamid Company,* 774 F.2d 448 (Fed.Cir. 1985) (in literal infringement case, where patentee erroneously represented during prosecution that a particular method was ineffective, patentee surrendered an interpretation of claim that encompassed that method, which was in fact effective). As in *Texas Instruments,* Colgate expressly stated that its claim was patentable because MCW, the only wax thought to bind to PTFE, was used differently than in the prior art. Colgate cannot now assert the equivalency of beeswax and MCW when it so patently characterized non-microcrystalline wax, including beeswax, as ineffective for the purpose taught in the '488 patent.

---

11. The Guyton patent states that "wax concentrations and waxing technique may be used in accordance with prior art practices for waxing dental textile members." Col. 4, lines 53–56. The Ashton patent, prior art to Guyton, teaches coating floss with wax that comprises 19 to 25 percent by weight. *See* col. 3, lines 46–53.

12. The Yost patent (U.S. Patent No. 4,414,990) teaches the use of waxes comprising about two to 30 percent by weight of the dental floss. *See* col. 2, line 68–col. 3, line 1. This was prior art when Colgate prosecuted its patent so it knew, or should have known, that smaller quantities of

wax could effectively coat dental floss. A reasonable competitor would construe Colgate's broad language to encompass the type and amount of wax used because, even if Yost was not specifically raised by the examiner as an obstacle to patentability, it and Ashton presented a range of waxing options one would expect to have been explored.

13. Whether Colgate abandoned MCW outside the specified molecular weight range, 580 to 800, is a question the Court need not, and does not, address.

Perhaps to avoid the clear import of *Texas Instruments*,[14] Colgate focuses the Court's attention on the fact that it surrendered no claim coverage by its amendment during prosecution of the '488 patent. Rather, Colgate asserts, it clarified the nature of its invention and cured any misapprehension the patent examiner may have entertained that MCW was used to decrease the coefficient of friction. Amendments and argument advanced for this purpose, Colgate submits, do not create an estoppel. *See Pall Corporation*, 66 F.3d at 1220 ("[W]hen claim changes or arguments are made in order to more particularly point out the applicant's invention, the purpose is to impart precision, not to overcome prior art. Such prosecution is not presumed to raise an estoppel, but is reviewed on its facts, with the guidance of precedent.").

But Colgate's argument before the patent examiner was more than mere clarification. Colgate's patent solicitor affirmatively described all non-microcrystalline waxes as unable to adhere to teflon, abandoning coverage of beeswax, Carnauba wax or any other non-microcrystalline wax. In contrast, the clarification that *Pall Corporation* held not to create an estoppel did not characterize Nylon 46, the allegedly infringing product, because that nylon was unknown commercially when Pall prosecuted its patent. *See Pall Corporation*, 66 F.3d at 1220. Because beeswax was known commercially when Colgate argued before the patent examiner, *Pall Corporation* casts no pall over *Texas Instruments*.

Indeed, after careful examination of the '488 patent's complete file wrapper, *see* Pfeffer Decl., Ex. 2, and consideration of precedent, the Court holds that *Texas Instruments* dictates the result here. Colgate's abandonment of non-microcrystalline wax estops the patentee from asserting equivalency of MCW and the beeswax Gore uses to coat its dental floss.[15]

Accordingly, Gore's Glide dental floss does not infringe Colgate's '488 patent literally or by equivalency.

---

14. Colgate raises a distinction without a difference when it notes that the decision in *Texas Instruments* was reached after a full investigation and hearing before the International Trade Commission. Where, as here, the prosecution history speaks for itself, summary judgment is appropriate. *See Mark I Marketing Corporation, R.R. Donnelley & Sons, Company*, 66 F.3d 285, 292 (Fed.Cir.1995) ("Mark I argues that, at a minimum, the question of prosecution history estoppel raises genuine issues of material fact precluding a grant of summary judgment. We disagree. The relevant facts here are undisputed; the prosecution history of the '241 patent is a matter of public record."), *cert. denied*, — U.S. —, 116 S.Ct. 917, 133 L.Ed.2d 847 (1996); *Haynes International, Inc. v. Jessop Steel Company*, 8 F.3d 1573 (Fed.Cir.1993) (granting summary judgment of noninfringement based on prosecution history estoppel); *Hoganas AB v. Dresser Industries, Inc.*, 9 F.3d 948 (Fed.Cir.1993) (same).

15. The Court rejects Colgate's argument that Gore's after-developed improvement or alternative can infringe by equivalency because the cases upon which Colgate relies are inapposite. *Atlas Powder Co. v. E.I. du Pont de Nemours & Co.*, 750 F.2d 1569, 1581 (Fed.Cir.1984) and *Johnson & Johnson v. W.L. Gore & Assoc.*, 377 F.Supp. 1353, 1355 (D.Del.1974) did not reach the issue of prosecution history estoppel. And like *Pall Corporation, Hilton–Davis Chemical Co. v. Warner–Jenkinson Co., Inc.*, 62 F.3d 1512, 1528 (Fed.Cir.1995) (en banc), *cert. granted*, — U.S. —, 116 S.Ct. 1014, — L.Ed.2d — (February 26, 1996) and *Micro Motion, Inc. v. Exac Corp.*, 741 F.Supp. 1426, 1441 (N.D.Cal.1990) did not address whether an estoppel arises when a patentee erroneously abandons as ineffective allegedly equivalent techniques or devices.